**Brenda Ann TRAVIS, Individually and as Next Friend of Jason Wayne Travis, et al, Petitioners,**

v.

**The CITY OF MESQUITE, Texas, et al, Respondents.**

**No. C–8576.**

Supreme Court of Texas.

May 20, 1992.

Edward H. Moore, Jr., Rita M. Zimmer, Dallas, Richard N. Countiss, Houston, for petitioners.

Edwin E. Wright, III, Ronald D. Wren, Dallas, for respondents.

ON MOTION FOR REHEARING

GAMMAGE, Justice.

Respondents' motion for rehearing is overruled. This court's opinions of December 31, 1990, are withdrawn and the opinions following are substituted in their place.

The issue in this case is whether police officers are insulated from liability for their decision to engage in a high-speed chase when the pursued vehicle collides with a third party, no matter how much danger the chase poses to others using the highway. The trial court rendered summary judgment for the city and the four police officers involved in the chase. With one justice dissenting, the court of appeals affirmed, holding that as a matter of law the police officers' actions could not constitute a proximate cause of the accident. 764 S.W.2d 576. We reverse and remand as to the two officers instituting the pursuit and the city, because the summary judgment evidence raised a fact issue whether the decision to pursue, under the facts and circumstances, was a proximate cause of the accident. We affirm the summary judgment for the two officers who merely responded to the radio call for assistance.

While working off-duty as late-night security guards at a truckstop, Mesquite police officers Vestal Ashby and Johnny McClure saw Stephen Adkins driving a vehicle (a "Z–28") in the back lot of the truckstop. Eric Lovell Wilson and Evelyn Anne Vestal were also in the car. Activity around the car made Ashby and McClure suspicious that the occupants were involved in prostitution. They approached Adkins' car and asked for his identification. After Adkins produced it, Ashby and McClure instructed Adkins to drive to the front lot of the truckstop and to wait there until the officers had checked his identification.

Adkins drove to the front lot but instead of stopping accelerated into the street. Ashby and McClure immediately pursued Adkins and also radioed the Mesquite Police Department. Officers Jim Duckworth and Sam McDonald heard the radio call and proceeded toward the scene.

Fleeing at a high rate of speed, Adkins went the wrong way onto a one-way highway access road. Ashby and McClure chased Adkins, also going the wrong way down the access road. Duckworth and McDonald entered the access road a mile or so further up the street going the correct direction. Their stated intention was to cut off Adkins from going the wrong way. The two sets of police cars were converging on Adkins from different directions.

Cresting a hill, Adkins crashed head-on into Brenda Travis' car, killing Leonel Lozano and injuring Travis and other passengers. Summary judgment evidence indicated that the whole chase and collision occurred in less than two minutes. While it is unclear whether both police vehicles had their sirens on, this evidence shows that at least the Duckworth and McDonald police car siren was sounding.

Travis, Lozano's survivors and the passengers sued the four police officers and the city of Mesquite, alleging negligence,

gross negligence, and violations of their civil rights under 42 U.S.C. § 1983 (1982) ["Section 1983"]. Plaintiffs also sued Adkins and his two passengers for negligence and gross negligence (and other grounds). The trial court granted a partial summary judgment requested by the police officers and the city disposing of the Section 1983 causes of action, but denied summary judgment as to the other claims. Those defendants then filed a Motion to Reconsider and Supplement Defendants' First Amended Motion, asserting as new grounds for summary judgment on the remaining claims (1) the lack of proximate cause as a matter of law, based on *Dent v. City of Dallas*, 729 S.W.2d 114 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), and (2) the impossibility of respondeat superior liability of the City of Mesquite absent individual liability on the part of the police officers. After reconsideration, the trial court granted final summary judgment in favor of the City of Mesquite and the police officers, and severed plaintiffs' causes of action against them from plaintiffs' causes of action against Adkins and his two passengers.

Included in the summary judgment evidence were the depositions of Officers Mc-Donald, Duckworth, Ashby and McClure. Plaintiffs pointed out portions of these depositions to raise fact issues precluding summary judgment. Ashby's deposition includes the following testimony:

Q. And you knew at the time that you and Officer McClure began this chase that injuries as a result of wrecks were a possible result of pursuit situations, right?

A. Yes, sir.

*    *    *    *    *    *

Q. And you knew that once you all headed east on the service road, that either your car or the Z–28 could possibly become involved in a head-on collision, right?

A. That's correct.

The depositions of each of the other three officers include similar testimony, which we set forth in the margin.[1] Notwithstanding this summary judgment evidence, a majority of the court of appeals panel concluded that as a matter of law the police officers' decisions both to initiate and continue chase, under the circumstances presented, could not have been a proximate cause of

---

1. The deposition of Officer Johnny McClure:
   Q. But you were aware at the time that you began the pursuit of the Z–28 that was involved here that injuries and accidents were a possible result from any pursuit situation, right?
   A. Yes, sir.
         *    *    *    *    *    *
   Q. And you knew at the time you started the chase that you were headed the wrong way down the service road and that the Z–28 that you were chasing could also have a head-on collision with oncoming traffic, right?
   A. Yes, sir.
   The deposition of Officer Sam McDonald:
   Q. Okay. And you knew that you were trying to stop a vehicle that was going to be driving head-on in your direction.
   A. Yes, sir.
   Q. Okay. And you know, obviously, that there was a possibility that a collision could have occurred because of that.
   A. Yes, sir.
   The deposition of Officer Jim Duckworth:
   Q. Two, Okay. So at least on two occasions, then, you had witnessed or come immediately upon the scene of an accident that was a result of your chasing a fleeing violator; is that correct?

A. That's correct.
Q. And you certainly understood by June 14, 1983 that was something that could occur with regard to any pursuit situation, right?
A. Yes, sir....
Q. That accidents were a possible result of a pursuit situation.
A. Yes, sir.
      *    *    *    *    *    *
Q. Okay. You knew that that hill formed a sight obstruction that would prevent vehicles traveling westbound on the other side of the little creek where the accident happened from seeing vehicles approaching from an eastbound direction on the frontage road, right?
A. If they were down in the dip, it would present a sight obstruction, yes.
Q. And by sight obstruction, you mean they just wouldn't be able to see an oncoming car, is that correct?
A. That's correct....
Q. And you understood that there could have been people traveling on the feeder road to get onto I–20 at the time you began your pursuit of the Z–28, right?
A. Yes, sir.

the collision. We hold the court of appeals misapplied the proximate cause doctrine.

The two elements of proximate cause are cause in fact and foreseeability. *City of Gladewater v. Pike*, 727 S.W.2d 514, 517 (Tex.1987). "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury, and without it harm would not have occurred. *Id.; Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex.1973). The summarized and quoted summary judgment evidence raises the inference that Adkins drove down the access road at an excessive speed because of the police decision to give chase. There was summary judgment evidence that the conduct of the police officers was a cause in fact of the accident in question, and of the injuries for which plaintiffs seek recovery.

"Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549–50 (Tex.1985); *Missouri Pac. RR. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977). Foreseeability does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence. *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 222 (Tex.1988); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex.1987). Although the criminal conduct of a third party may be a superseding cause which relieves the negligent actor from liability, the actor's negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of such negligence. *Poole*, 732 S.W.2d at 314; *Nixon*, 690 S.W.2d at 550; RESTATEMENT (SECOND) OF TORTS § 448 (1965). There can be concurrent proximate causes of an accident. All persons whose negligent conduct contributes to the injury, proximately causing the injury, are liable. *Poole*, 732 S.W.2d at 313; *Strakos v. Gehring*, 360 S.W.2d 787, 789 (Tex.1962); *McAfee v. Travis Gas Corp.*, 137 Tex. 314, 323, 153 S.W.2d 442, 447 (1941). When the intervening illegal negligent act is foreseeable, it does not negate the continuing proximate causation and consequent liability of the initial actor. *Nixon*, 690 S.W.2d at 550.

We recognize that police officers must make their decisions about pursuing a fleeing suspect rapidly while under pressure, but we have concluded that there is no special statutory provision excepting police officers from the recited legal standards for proximate cause. Police officers must balance the risk to the public with their duty to enforce the law to choose an appropriate course of conduct. Public safety should not be thrown to the winds in the heat of the chase.

Our state legislature has enacted at least two statutes applying to police cars as emergency vehicles stating the driver is *not* relieved of "the duty to drive with due regard for the safety of all persons [using the highway]."[2] The well-reasoned dissent

2. Tex.Rev.Civ.Stat.Ann. art. 6701d, § 75 (Vernon 1977), provides (emphasis supplied):
   (a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of Section 124 of this Act, or of a police vehicle properly and lawfully making use of an audible signal only:
   1. The driver of every other vehicle shall yield the right-of-way ... and remain in such position until the authorized emergency vehicle has passed.

   *  *  *  *  *  *

   (b) This section shall not operate to relieve the driver of an authorized emergency vehicle from *the duty to drive with due regard for the safety of all persons using the highway.*
   Tex.Rev.Civ.Stat.Ann. art. 6701d, § 24 (Vernon 1977 & Supp.1989) provide (emphasis supplied):

   (b) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law ... may exercise the privileges set forth in this section, but subject to the conditions herein stated.
   (c) The driver of an authorized emergency vehicle may:
   1. Park or stand, irrespective of the provisions of this chapter;
   2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
   3. Exceed the maximum speed limits so long as he does not endanger life or property;
   4. Disregard regulations governing direction of movement or turning in specified directions.

in the court of appeals correctly concluded that the policy embodied in those statutes does not shield police officers from liability for automobile accidents caused by the pursuit. Under similar statutory schemes and facts involving high-speed police pursuits in which the pursued vehicle injures innocent third parties, the courts of other jurisdictions have rejected the "no duty" and "no proximate cause as a matter of law" rationales of older cases which insulated police from liability.[3] We regard these as the better reasoned cases.

The decision to initiate or continue pursuit may be negligent when the heightened risk of injury to third parties is unreasonable in relation to the interest in apprehending suspects. *Smith v. City of West Point,* 475 So.2d 816, 818 (Miss.1985); *Oberkramer v. City of Ellisville,* 650 S.W.2d 286, 292–93 (Mo.App.1983). We agree with the Supreme Court of Connecticut's statement, in a case involving police officers' conduct in maintaining a police pursuit at high speeds in the wrong direction on a busy one-way street, to apprehend suspects thought to be too young to have drivers' licenses:

> The intervention of negligent or even reckless behavior by the driver of the car whom the police pursues does not, under the emergent majority view, require the conclusion that there is a lack of proximate cause between police negligence and an innocent victim's injuries.

(d) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use, at the discretion of the driver of the vehicle, in accordance with the policies of the Department or the local government, of audible or visual signals meeting the requirements of Section 124 of this Act....
(e) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from *the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.*

3. *Biscoe v. Arlington County,* 738 F.2d 1352 (D.C.Cir.1984); *Myers v. Town of Harrison,* 438 F.2d 293 (2d Cir.), *cert. denied,* 404 U.S. 828, 92 S.Ct. 64, 30 L.Ed.2d 57 (1971); *Schatz v. Cutler,* 395 F.Supp. 271 (D.Vt.1975); *City of Sacramento*

*Tetro v. Town of Stratford,* 189 Conn. 601, 604, 458 A.2d 5, 8 (1983).

We hold that fact issues were raised precluding summary judgment as to Ashby, McClure, and the City of Mesquite. Respondents' counsel conceded, in reargument on motion for rehearing, that fact issues remain requiring reversal and remand for trial. While we recognize that police pursuit is often important and necessary in apprehending criminals posing a danger to our society, we cannot, as the dissent apparently does today, conclude that all chases are reasonable no matter what the circumstances. Our approach today seeks to preserve not only the public safety, but also the lives of the officers entrusted to protect it.[4]

■ The evidence establishes that Officers McDonald and Duckworth did no more than respond to a call for assistance. They did not participate in the decision to institute the chase nor to continue the pursuit once Adkins headed down the access road in the wrong direction. We accordingly affirm the summary judgment in their favor.

■ Respondents assert that the trial court's grant of summary judgment should be upheld on grounds of common-law immunity accorded governmental officials in the performance of discretionary acts. A motion for summary judgment must "state the specific grounds therefor," and "[i]ssues not expressly presented to the trial court by written motion, answer or

*v. Superior Court,* 131 Cal.App.3d 395, 182 Cal. Rptr. 443 (1982); *Tetro v. Town of Stratford,* 189 Conn. 601, 458 A.2d 5 (1983); *Fiser v. City of Ann Arbor,* 417 Mich. 461, 339 N.W.2d 413 (1983); *Smith v. City of West Point,* 475 So.2d 816 (Miss.1985); *Oberkramer v. City of Ellisville,* 650 S.W.2d 286 (Mo.App.1983); *Selkowitz v. County of Nassau,* 45 N.Y.2d 97, 379 N.E.2d 1140, 408 N.Y.S.2d 10 (1978); *Kuzmics v. Santiago,* 256 Pa.Super. 35, 389 A.2d 587 (1978); *Mason v. Bitton,* 85 Wash.2d 321, 534 P.2d 1360 (1975).

4. In her dissenting opinion in the court of appeals, Judge Thomas referred to national data indicating that "one pursuit in five leads to a traffic fatality (and) in only one percent of the cases was someone in the car wanted for violent crimes." 764 S.W.2d at 579.

other response shall not be considered on appeal as grounds for reversal." TEX. R.CIV.P. 166a(c). In an appeal from a summary judgment, issues to be reviewed by the appellate court must have been actually presented to and considered by the trial court. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 675–77 (Tex.1979). A summary judgment cannot be affirmed on a ground not specifically presented in the motion for summary judgment. *See also Dhillon v. General Accident Ins. Co.*, 789 S.W.2d 293, 295 (Tex. App.—Houston [14th Dist.] 1990, no writ); *Houston Lighting & Power Co. v. Wheelabrator Coal Services Co.*, 788 S.W.2d 933, 936 (Tex.App.—Houston [14th Dist.] 1990, no writ). Neither the motion for summary judgment nor the motion for reconsideration filed in the trial court raised the issue of state law immunity.[5] Consequently, never having been presented to the trial court, the question cannot now be urged as a ground for affirming the summary judgment. Because the issue is not presented, we express no opinion regarding respondents' arguments concerning state law immunity, or the analysis urged by the concurring justices.

We reverse the judgment of the trial court and court of appeals, except as to McDonald and Duckworth. We have considered all of respondents' arguments advancing alternative theories or grounds for upholding the summary judgment and find

them without merit.[6] We remand the cause to the trial court.

MAUZY, HIGHTOWER and DOGGETT, JJ., joined.

Concurring Opinion by CORNYN, J., joined by PHILLIPS, C.J., and GONZALEZ, J.

Dissenting Opinion by COOK, J.

HECHT, J., not sitting.

CORNYN, Justice, concurring.

Although I agree that the judgment of the court of appeals must be reversed and remanded to the trial court for further proceedings, I disagree with the plurality's holding that the issue of state law immunity was not preserved for our review. The police officers' motion for summary judgment (entitled Motion for Reconsideration of Defendants' First Amended Motion for Summary Judgment and Supplement to Defendants' First Amended Motion for Summary Judgment) and the plaintiffs' response unmistakably raised this issue in the trial court and it has been preserved for our review. By unnecessarily avoiding this issue, the plurality has condemned the litigants to further rounds of expensive, time-consuming and inconclusive litigation.[1] Official immunity is an unsettled and important issue in our jurisprudence and cries out for elucidation for the benefit of future litigants too.[2] Finally, because the offi-

---

5. Defendants' First Amended Motion for Summary Judgment did not assert that the doctrine of state law immunity barred liability. The Motion for Reconsideration cited to the trial court new authority, *Dent v. City of Dallas*, 729 S.W.2d 114 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), as support for granting the earlier motion. Additionally, the Motion for Reconsideration asserted two new grounds for summary judgment, one premised on the *Dent* decision:

Further, Defendants would allege as a supplemental ground for Summary [Judgment] the fact that, as a matter of law, there is no proximate cause between the acts of Defendants and Plaintiffs' alleged damages. As held in the *Dent* opinion, the actions of the fleeing driver in fleeing from Defendant officers and in ignoring all traffic laws during his flight was the sole proximate cause of the accident as a matter of law.

This latter paragraph, and the accompanying discussion of the *Dent* opinion, did not inject

the issue of state law immunity into the summary judgment proceedings.

6. We express no opinion, however, as to the correctness of the trial court's interlocutory summary judgment relieving the city and the individual officers from liability under Section 1983.

1. It is worth noting that the trial court signed the order granting the defendants final summary judgment on all claims on May 6, 1987. Hopefully, it will not be another five years before this case is finally resolved.

2. The terms "qualified" and "official" appear to be used indiscriminately and interchangeably by some courts. The logical explanation appears to be that, in state court, claims under both the Texas Tort Claims Act and 42 U.S.C. § 1983 are frequently joined. Furthermore, the elements of official immunity and qualified im-

cers' entitlement to immunity is dispositive of the City's liability under the Texas Tort Claims Act (TTCA), I believe this issue is before the Court and should be addressed as well. Because the plurality fails to address either of these issues, I write separately to do so.

## I.

The plurality holds that "[n]either the motion for summary judgment nor the motion for reconsideration ..." raise the issue of state law immunity. At 100. I disagree. The record reveals that the issue of the police officers' state law immunity was raised in the officers' original motion for summary judgment. Following the trial court's partial summary judgment in favor of the officers and City for claims made under section 1983,[3] the officers later filed a motion for reconsideration, styled Motion for Reconsideration of Defendants' First Amended Motion for Summary Judgment and Supplement to Defendants' First Amended Motion for Summary Judgment, in part based on the then recent decision in *Dent v. City of Dallas*, 729 S.W.2d 114 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Seeking to avail themselves of each defense raised and upheld in *Dent*, the officers stated that the *Dent* court held "on almost identical facts ... that the officer was entitled to official immunity." By so doing, the respondents presented the basis of their claim and cited its source, putting the issue directly before the court.

A party who wishes to place an issue before the court on summary judgment is required to "expressly set out" the issue by "written motion, answer or other response." TEX.R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 675 (Tex.1979). The purpose of this rule is to ensure that the non-movant has adequate notice of the movant's claims such that it will enable the non-movant to prepare a response. *Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex.1978). *See also Thomas v. Cisneros*, 596 S.W.2d 313, 316 (Tex.App.—Austin 1980, writ ref'd n.r.e.) (grounds for summary judgment are sufficiently specific where they consist of a concise statement sufficient to give notice to the non-movant of the grounds upon which judgment is sought). It is apparent that both the trial court and opposing counsel were fully aware of the officers' reliance on the affirmative defense of official immunity. Because the parties squarely presented the question of official immunity for determination, and the trial court decided this issue in granting the motion, it can be only by applying a tortuous application of Rule 166a(c) that the plurality concludes that this issue has not been preserved.

Travis's briefs filed in the court of appeals and in this court demonstrate Travis's acknowledgement of the officers' reliance on the affirmative defense of official immunity. In section four of her response to the respondents' motion for reconsideration, Travis paraphrased the definition of good faith immunity, but argued that it only applied to federal law claims, and stated that "there should be no granting of summary judgment based on the applicability of the doctrine of qualified immunity...." Point of error five in Travis' brief in the court of appeals states in summary that "police officers [are] not entitled to qualified immunity for their negligent or grossly negligent acts." Since the trial court had previously granted both the City and the officers summary judgment as to Travis's section 1983 claims, Travis could only be addressing immunity to state law claims, namely official immunity. Furthermore, in Travis's response to the argument

munity appear for all practical purposes to be the same. In fact, as further indication of the confusion over the proper designation of this type of immunity, official immunity has been called a number of different names by a number of different courts: *See e.g. Carpenter v. Barner*, 797 S.W.2d 99, 101 (Tex.App.—Waco 1990, writ denied) (immunity variously known as governmental, official, quasi-judicial or quali-

fied); *Stimpson v. Plano Indep. School Dist.*, 743 S.W.2d 944, 947–48 (Tex.App.—Dallas 1987, writ denied) (good faith immunity); *Baker v. Story*, 621 S.W.2d 639, 644 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e) (quasi-judicial immunity).

**3.** All references to § 1983 refer to 42 U.S.C. § 1983.

raised by the Texas Department of Public Safety as amicus curiae, Travis urges that "[t]here is no official immunity for police officers." Though no doubt the officers could have more clearly and distinctly articulated the basis for their state law immunity defense, in light of the confusing manner in which official immunity has been addressed by our courts, their quandry is understandable.

When the non-movant has notice of the grounds upon which summary judgment is sought, the purpose of Rule 166a(c) has been sufficiently met to preserve error. Because Travis briefed and argued the issue of the officers' immunity from state law claims, the issue was joined and preserved such that it is properly before this Court.[4]

## II.

Official immunity to negligence liability attaches to a government employee's official actions only when the employee's job requires the exercise of personal judgment and discretion. When a government employee carries out the discretionary duties of his job in good faith and acts within the scope of his authority, the employee is entitled to official immunity from suit. *Baker v. Story*, 621 S.W.2d 639, 644 (Tex.Civ. App.—San Antonio 1981, writ ref'd n.r.e.). In contrast, a government employee's performance of duties that are merely ministerial in nature are not cloaked with official immunity. At the threshold, then, we are confronted with the issue of whether the officers' actions about which Travis complains were discretionary or ministerial.

The distinction between discretionary and ministerial acts has been problematic for legal commentators[5] and courts alike. As Professors Prosser and Keeton point out, "the conclusion that the officer's acts were 'discretionary' is probably only a shorthand notation for a more complex policy decision." PROSSER & KEETON at 1062. However, more than one hundred years ago this Court distinguished discretionary and ministerial acts in this manner:

[Ministerial acts are those] where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.... [B]ut where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.

*Rains v. Simpson*, 50 Tex. 495, 501 (1878) (quoting *Commissioner of the General Land Office v. Smith*, 5 Tex. 471, 479 (1849)); *see also Wyse v. Department of Public Safety*, 733 S.W.2d 224, 227 (Tex. App.—Waco 1986, writ ref'd n.r.e.) ("[d]iscretionary actions are those which require personal deliberation, decision and judgment, while ministerial actions require obedience to orders or the performance of a duty as to which the actor is left no choice"); *Austin v. Hale*, 711 S.W.2d 64, 67 (Tex.App.—Waco 1986, no writ); *Baker*, 621 S.W.2d at 645.

As a general proposition, it seems obvious that police officers performing discretionary duties in good faith and acting

---

**4.** Parenthetically, it is significant that the Legislature amended Section 51.014 of the Texas Civil Practices and Remedies Code in 1989 to allow a government employee an interlocutory appeal of an order denying a summary judgment based on official immunity. TEX.CIV.PRAC. & REM. CODE § 51.014(5). This rare opportunity for interlocutory appellate review reveals just how important the legislature considers the defense of official immunity for government employees to be. When successfully invoked, such procedure renders an officer's immunity an *immunity from suit*, not just immunity from liability. See *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985) (addressing right to interlocutory appeals from denial of summary judgment based on qualified immunity to section 1983 claims). The very reasons for

the grant of immunity are effectively unsalvageable if the official is determined to be immune from liability only after a trial on the merits. *Id.* at 525, 105 S.Ct. at 2814–15 (cases cited). The articulated basis for such immunity is: the importance of avoiding distraction of officials from their governmental duties; the desire to avoid inhibition of discretionary action; minimizing deterrence of able people from public service; avoiding the costs of an unnecessary trial; and insulating officials from burdensome discovery. *Id.*

**5.** *See e.g.*, W. KEETON, PROSSER & KEETON ON TORTS 1062 (5th ed. 1984) (hereinafter PROSSER & KEETON); RESTATEMENT (SECOND) OF TORTS § 895D, comment b.

within the course and scope of their employment should be entitled to official immunity. Nowhere else in public service is official immunity more appropriate or necessary than in police work. In their routine work, police officers must be free to make split-second judgments in good faith based on their experience and training, without fear of personal liability. To hold otherwise "would likely cause other peace officers under similar circumstances to flinch from acting because of fear of liability." *Carpenter v. Barner*, 797 S.W.2d 99, 102 (Tex.App.—Waco 1990, writ denied) (*citing Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987)). "Creating that potential does not serve the public's interest." *Id.* Were there no immunity from personal liability under such circumstances, "the prudent would be reluctant to enter governmental service and even competent persons who entered public life would not be zealous in discharging their duties." *Baker*, 621 S.W.2d at 643–44.

Plainly, the police officers in this case were performing discretionary duties. The police officers' decision to pursue the suspects at high speed was an exercise of discretion and judgment and not one required by any policy. In fact, the Mesquite city policy governing police chases explicitly makes the decision to continue a chase discretionary. Furthermore, it is undisputed that the police officers were acting within the scope of their employment. It is undisputed that while their initial contact with the suspects was as security guards for the truck stop, their subsequent pursuit of the suspects was in their capacity as police officers. Thus, the only issue left to resolve is whether the police officers were acting in good faith when they chose to pursue the suspects at high speed.

"Good faith," like the distinction between ministerial and discretionary acts, has proven to be an elusive concept for our courts. Historically, Texas courts have focused more on the distinction between ministerial

and discretionary acts and have glossed over the issue of good faith. *See Austin*, 711 S.W.2d at 68; *Russell v. Texas Dept. of Human Resources*, 746 S.W.2d 510, 514 (Tex.App.—Texarkana 1988, writ denied). Unwittingly compounding the confusion, Texas courts have occasionally failed to acknowledge that official immunity is an affirmative defense and have erroneously shifted the burden to the plaintiff to prove that the defendant acted in bad faith. *See Carpenter*, 797 S.W.2d at 101; *Pierson v. Independent School Dist.*, 698 S.W.2d 377, 381 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Only a few cases discuss good faith in the context of a claim of official immunity to a common law cause of action. Because of the similarity between good faith as it applies to the defense of qualified immunity to section 1983 claims, these cases addressing good faith in that context are instructive.

The United States Supreme Court addressed good faith in qualified immunity cases in *Wood v. Strickland*, 420 U.S. 308, 315, 95 S.Ct. 992, 997–98, 43 L.Ed.2d 214 (1975). The *Wood* Court determined that a proper balance of competing interests was best achieved by adopting a definition of "good faith" that incorporated both a subjective and an objective element.[6] *Id.* at 322, 95 S.Ct. at 1000–01. In a decision specifically limited to the context of school discipline, the Court held that a public official is not immune from liability under section 1983 if:

> he knew or reasonably should have known that the action he took would violate the constitutional rights of the student affected [the objective element], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student [the subjective element].

*Wood*, 420 U.S. at 322, 95 S.Ct. at 1001. The Court later, however, adopted the quoted language as a "general statement of the qualified immunity standard." *Har-*

---

**6.** Were good faith merely subjective, there would rarely, if ever, be a jury trial on the affirmative defense of official immunity. The officer's affidavit, attesting to the requisite men-

tal state, could not be readily controverted by the plaintiff, if at all. Under such circumstances, official immunity would be essentially absolute, regardless of the objective evidence.

*low v. Fitzgerald,* 457 U.S. 800, 815 n. 25, 102 S.Ct. 2727, 2737 n. 25, 73 L.Ed.2d 396 (1982).

In this case we are faced with a similar need to balance clearly competing interests. On one hand, we must readily acknowledge:

> (1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; [and] (2) the danger that the threat of such liability would deter his willingness to execute his office with decisiveness and the judgment required by the public good.

*Scheur v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974). On the other hand, the courts are duty bound to protect the rights of innocent bystanders when a police officer totally disregards public safety. In my view, to properly balance both of these considerations, the test for "good faith" as an element of official immunity in police chase cases should contain both objective and subjective elements. Hence, a proper resolution of the good faith element in the affirmative defense of official immunity requires an inquiry into the permissible intentions of the police officer and the reasonableness of the officers' actions in light of the risk of harm to the public.

In light of these considerations, I would hold that an officer fails to act in "good faith" if:

> 1) the officer knows that a clear risk of harm to the public in continuing the pursuit substantially outweighs the need to immediately apprehend the suspect (the subjective element); or
>
> 2) a reasonably prudent police officer, under the same or similar circumstances, would know that the clear risk of harm to the public in continuing the pursuit substantially outweighs the need to immediately apprehend the suspect (the objective element).

Under this standard, the plaintiff's burden is to defeat one or more of the elements of the affirmative defense of official immunity once a prima facie case for its applica-

tion is established. Such a standard preserves a meaningful immunity upon which police officers may rely in performing their duties, and yet protects innocent persons injured by police conduct when an element of the affirmative defense is found lacking by the trier of fact. This standard seeks to achieve a balance between the competing interests we have described and represents the most workable accommodation of the rights of all parties involved.

Here, however, the summary judgment evidence fails to establish either the subjective and objective elements of good faith as a matter of law. There is no evidence in the record of the police officers' subjective belief that they were acting in good faith in their high speed chase. Our standards for summary judgment require the officers to produce summary judgment evidence establishing all elements of their claim to official immunity as a matter of law. *See Roark v. Stallworth Oil and Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991). Additionally, the sole evidence of the officers' objective good faith is Dr. Territo's deposition testimony. This opinion evidence is not predicated on a proper legal standard and, thus, falls short of the quality of evidence necessary to sustain a summary judgment on this basis. *See Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 365 (Tex. 1987). Since the summary judgment evidence fails to establish either prong of the test for good faith, the summary judgment cannot be affirmed on the basis of official immunity.

### III.

Similarly, the record fails to demonstrate that the City was entitled to summary judgment under the Texas Tort Claims Act ("TTCA"). As a general rule the State, its agencies and political subdivisions are immune from tort liability based on the doctrine of sovereign immunity. *State v. Brannan,* 111 S.W.2d 347, 348 (Tex.Civ. App.—Waco 1937, writ ref'd). As a political subdivision of the State, the City of Mesquite enjoys absolute immunity from tort liability absent a specific waiver of such immunity. *See Turvey v. City of*

*Houston,* 602 S.W.2d 517, 519 (Tex.1980); *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976). The applicable waiver provision of the TTCA provides:

A governmental unit in the state is liable for:

1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:

A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; **and**

B) **the employee would be personally liable** to the claimant according to Texas law; and

2) personal injury and death so caused by a condition or use of tangible personal property or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE § 101.021 (emphasis supplied).

It follows from the plain language of section 101.021 that the City's liability under the TTCA depends on the personal liability of its police officers. *Carpenter,* 797 S.W.2d at 102; *Wyse,* 733 S.W.2d at 228; *Dent,* 729 S.W.2d at 117. Because there is a fact issue pertaining to the officers' liability, the judgment of the court of appeals must be reversed on this ground as well.

\*    \*    \*    \*    \*    \*

For the foregoing reasons, I concur in the Court's judgment. However, I respectfully dissent to that portion of the opinion which holds that respondents have failed to preserve error on the issue of official immunity and the City's liability under the TTCA.

PHILLIPS, C.J., and GONZALEZ, J., join in this concurring opinion.

COOK, Justice, dissenting.

I respectfully dissent. In this case, *all* the police officers and the City are entitled to prevail as a matter of law and, therefore, the court of appeals' judgment should be affirmed. As a matter of law, under the facts in this case, the police officers are not a proximate cause of the injuries. The Court also ignores many of the facts in this case. After the accident, the suspect stated to investigating officers that he fled to avoid apprehension because of outstanding warrants for his arrest: one for armed robbery and one on a motion to revoke his probation for a burglary conviction. Atkins was a convicted felon in violation of his parole.

Moreover, the entire chase took place in less than two minutes. The officers' decision to pursue Atkins did not play a part in bringing about the accident. Atkins had decided to run for it before the officers ever began their pursuit.

Proximate cause is an essential element of actionable negligence. *Payne & Keller v. P.P.G. Industries,* 793 S.W.2d 956, 958 (Tex.1990). Therefore, the summary judgment in favor of the City must be affirmed if the City's summary judgment evidence shows that, as a matter of law, the police officers were not a proximate cause of the accident. *See Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (1970). I believe that the City's evidence establishes this as a matter of law.

In *Dent v. City of Dallas,* 729 S.W.2d 114 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), the court examined the issue of a police officer's liability to an innocent third party who is injured or killed in an accident involving a suspect being pursued by a police officer. The court held that the *sole* proximate cause of the accident, as a matter of law, was the suspect's grossly negligent behavior in fleeing from the police officer and by ignoring all traffic laws during his flight until he crashed into the decedent. *Id.* at 116. In this case, the court of appeals looked to *Dent* for instruction and determined that, as a matter of law, in circumstances such as these, the police officers are not *a* proximate cause of the injuries. With this refinement, the court of appeals followed the reasoning of *Dent.*

The police officers were not a proximate cause of the accident. In holding other-

wise, the Court ignores substantial authority from other jurisdictions that recognizes that an officer's conduct in electing to pursue a lawbreaker is not the proximate cause of injuries resulting from the lawbreaker's negligence. *See United States v. Hutchins,* 268 F.2d 69, 72 (6th Cir.1959); *State of West Virginia v. Fidelity and Casualty Co. of N.Y.,* 263 F.Supp. 88, 90–91 (S.D.W.Va.1967); *Pagels v. City and County of San Francisco,* 135 Cal.App.2d 152, 153–56, 286 P.2d 877, 878–79 (1955); *Draper v. City of Los Angeles,* 91 Cal. App.2d 315, 318, 205 P.2d 46, 48 (1949); *City of Miami v. Horne,* 198 So.2d 10, 12–13 (Fla.1967); *Downs v. Camp,* 113 Ill. App.2d 221, 227, 252 N.E.2d 46, 50 (1969); *Bailey v. L.W. Edison Charitable Foundation,* 152 Ind.App. 460, 466, 284 N.E.2d 141, 145 (1972); *Thornton v. Shore,* 233 Kan. 737, 753, 666 P.2d 655, 668 (1983); *Chambers v. Ideal Pure Milk Co.,* 245 S.W.2d 589, 590–91 (Ky.1952); *Oberkramer v. City of Ellisville,* 706 S.W.2d 440, 442 (Mo.1986); *Blanchard v. Town of Kearny,* 145 N.J.Super. 246, 248, 367 A.2d 464, 465 (Law Div.1976); *Roll v. Timberman,* 94 N.J.Super. 530, 536, 229 A.2d 281, 284 (1967); *Silva v. City of Albuquerque,* 94 N.M. 332, 333, 610 P.2d 219, 220 (Ct.App. 1980); *Mitchell v. State,* 108 A.D.2d 1033, 1034, 486 N.Y.S.2d 97, 99 (1985); *Simmen v. State,* 81 A.D.2d 398, 400, 442 N.Y.S.2d 216, 218 (1981); *Stanton v. State,* 29 A.D.2d 612, 612–14, 285 N.Y.S.2d 964, 967–69 (1967); *Wrubel v. State,* 11 Misc.2d 878, 879–81, 174 N.Y.S.2d 687, 689–90 (Ct.Cl. 1958); *McMillan v. Newton,* 63 N.C.App. 751, 753, 306 S.E.2d 470, 472 (1983); *Jackson v. Olson,* 77 Or.App. 41, 44–47, 712 P.2d 128, 130–31 (1985).

The Court requires officers to abandon their instinct, training and experience while attempting to perform their legally imposed duties. Police officers are required to exercise their discretion in performing police duties. The Court's opinion will deter officers' willingness to execute their office with decisiveness and the judgment required for the public welfare.

Each year thousands of innocent Americans are killed by drunken drivers. Because of the lack of action by our elected representatives to take steps necessary to rid our streets of drunken drivers, the role of the men and women in blue has become even more important. Unfortunately, a significant number of hot pursuits involve drivers trying to avoid a DWI-drug arrest. *See* Operational Planning Section of the California Highway Patrol, *Pursuit Study* 72 (1983). By discouraging the pursuit of these fugitives, the Court would add to this already overwhelming problem.

Additionally, nearly thirty-six million Americans were victims of serious crimes in 1989, including nearly nineteen thousand murder victims. Witkin, *Cops Under Fire,* U.S. News & World Report, Dec. 3, 1990, at 33. In the first six months of 1990, reported violent crimes increased by ten percent over the comparable period the previous year. *Id.*

Furthermore, official immunity protects the police officers under the facts in this case. It is important to remember that the thin blue line is the only thing that separates each of us from the jungle that is increasingly overtaking our society. To hold the police officers liable for their conduct in this case would be to make them the insurers for the negligent damage caused by those who violate our laws. The police officers of this state should not be liable for the negligent conduct of drug dealers, drunken drivers, and other felons.