NUMBER 13-98-663-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


_______________________________________________________________________


MARK BUNYARD
, Appellant,


v.



RICHARD GARZA, LA BARRETA 

COMPANY, KENEDY MEMORIAL 

FOUNDATION AND/OR KENEDY 

RANCH, AND STUART SASSER
, Appellees

_______________________________________________________________________


On appeal from the 28th District Court


of Nueces County, Texas.


_______________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and Rodriguez


Opinion by Chief Justice Seerden



 This is an appeal from a take-nothing judgment rendered in favor
of Richard Garza and La Barreta Company,(1) appellees.

 Mark Bunyard, appellant, arranged a hunting excursion on the
Kenedy Ranch for some of his associates, Dominic Valente and Ronald
LaPointe, for the weekend of February 17-19, 1995. Bunyard arranged
the excursion through La Barreta Company. During their time on the
Ranch, the hunters were led by Richard Garza, a La Barreta employee. 
In the scope of his employment, Garza would drive hunters around the
Ranch in a Suburban owned by La Barreta. During the weekend, Garza
drove the Suburban on a hunt, with Bunyard as a passenger. Bunyard
claimed that Garza operated the vehicle at excessive speeds, given the
terrain over which they were traveling. He testified that he and the
other passengers, Valente and LaPointe, were "thrown around," hitting
their heads and bodies against the vehicle's interior. He claimed the
impact caused him spinal injuries. Bunyard filed suit against La Barreta. 

 The trial court entered judgment on the jury's verdict finding that
no negligent action by La Barreta was the proximate cause of Bunyard's
injuries.

 By his first issue, Bunyard contends that the judgment of the trial
court was erroneous because the jury's findings were against the great
weight and preponderance of the evidence. In conducting a review of
the factual sufficiency of the evidence, we examine all of the presented
evidence, regardless of its effect on the reviewed finding. Lofton v.
Texas Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986); Pittsburgh
Corning Corp. v. Walters, 1 S.W.3d 759, 778 (Tex. App.--Corpus Christi
1999, no pet.). We may reverse the challenged findings only if they are
"so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust." Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); Pittsburgh Corning Corp., 1 S.W.3d at 778. 

 The jury was asked to determine if the negligence, if any, of La
Barreta (through its agent, Garza) proximately caused injury to Mark
Bunyard. Proximate cause is "that cause, unbroken by any new and
independent cause, which produces injury and without which the injury
would not have occurred." Portlock v. Perry, 852 S.W.2d 578, 583
(Tex. App.--Dallas 1993, writ denied). It consists of two elements:
cause in fact and foreseeability. Travis v. City of Mesquite, 830 S.W.2d
94, 98 (Tex. 1992). "Cause in fact" means that the act or omission was
a substantial factor in bringing about the injury, and without it harm
would not have occurred. Id. "Foreseeability" means that the actor, as
a person of ordinary intelligence, should have anticipated the dangers
that his act created for others. Id. The evidence must show a clear
connection between the defendant's acts and the plaintiff's damages.

 The record reflects that all four participants in the hunting
excursion testified. Garza testified that he has led hundreds of similar
excursions over the same terrain while employed by La Barreta. He
testified that while traveling on the caliche roads on the Ranch, it is his
practice to maintain the speed limit of twenty-five to thirty miles per
hour. On all other roads and off-road, he said, the speed limit is
dictated by an assessment of what is a safe traveling speed, but
acknowledged that it would be dangerous to drive any faster than ten
or fifteen miles per hour on that land. Garza testified that it is his
practice to drive more slowly as the terrain becomes more treacherous;
that it would be unimaginable to drive as fast as twenty or thirty miles
per hour in the areas where he hunted; and that he had never reached
such speeds in those areas. Garza acknowledged that he did not recall
the Bunyard hunt specifically, but did recognize Bunyard by sight. 

 Valente testified that he had been on numerous "driving hunts,"
or hunts where vehicles were used to pursue the prey. He agreed that
while the guide is the driver, the hunters retain a certain amount of
responsibility to tell the guide if he is driving unsafely. When asked
what speeds the Suburban reached during the hunt, Valente admitted
that it would be hard to provide an exact figure, but estimated the
speeds to be "30, 40 miles an hour, maybe more." Valente also
admitted, however, that he did not look at the speedometer and that all
of his opinions about the speed of the vehicle were estimates. Valente
recalled that neither the hunters in the group nor Bunyard ever told
Garza that he was driving too fast or unsafely. Valente testified that he
did not believe that Garza did anything out of the ordinary.

 La Pointe testified that he believed the vehicle was exceeding
thirty miles per hour while in pursuit off-road, but admitted that, like
Valente, he never saw the speedometer. He recalled that the hunters
would have been "tossed around pretty well" even if they had been
traveling at five or ten miles per hour. He agreed that common sense
would have told anyone to tell the driver to stop and slow down if there
was a chance of serious injury, but recalled that none of the passengers
ever made such a request. He remembered that Bunyard reported some
back problems immediately after the hunt concluded. LaPointe
concluded that Garza was "excellent" with the truck. 

 Finally, Bunyard testified on his own behalf. He said that the only
cautionary instruction Garza provided was a warning that the hunters
not chamber a round in their rifles while in the truck. More particularly,
Bunyard stated that Garza never told him or anyone else to put on a
seatbelt. Bunyard also admitted that no one stopped him from wearing
a seatbelt and that he made a conscious decision to not restrain
himself. 

 Bunyard stated that when Garza took the Suburban off-road, he
was "bounced around," and said that he hit his head on the roof of the
vehicle several times. He testified that where Garza took the Suburban
off-road, the grass was very high and that he could not see the terrain. 
Bunyard estimated that in these conditions, Garza was driving the
vehicle at approximately thirty miles per hour or faster. He testified that
Garza gave no warning that he was going off-road and that Garza drove
"a little rough" while in the off-road pursuit. Bunyard admitted that he
never asked Garza to alter his driving manner.

 Bunyard furthermore testified that he had never had back
problems prior to this hunting trip, but said that within ten days after
the hunt, he began to have chest pains. He stated that he informally
visited a friend who is a doctor on at least three occasions within the
next fourteen months to describe his pain, but stated that he did not
see a doctor in an office until approximately fourteen months after the
hunting trip. Nevertheless, Bunyard testified that he had suffered
trauma to his cervical, thoracic, and lumbar vertebrae. His doctor
corroborated this testimony. Bunyard testified that the pain was often
debilitating and had caused him to substantially reduce his workload
and cease his hunting guide business altogether. 

 It is the jury's province to evaluate the testimony presented, judge
the relative credibility of that evidence, and determine the weight to be
given to that evidence. See Duron v. Merritt, 846 S.W.2d 23, 26 (Tex.
App.--Corpus Christi 1992, no writ). When provided with conflicting
evidence, the jury may disbelieve any part or all of the testimony of one
witness in favor of part or all of the testimony of others. Mashcon
Wholesale Distrib., Inc. v. A. Benjamini & Co., Inc., 982 S.W.2d 119,
125 (Tex. App.--Houston [1st Dist.] 1998, pet. denied). 

 Here, the evidence is clearly conflicting. However, the jury was
free to assess the testimony and determine the weight to give to each
side. The jury's verdict indicates that it chose to give more weight to
the testimony which suggested that Garza had operated the vehicle in
a safe manner and that Bunyard's injuries were not proximately caused
by Garza's actions. The record supports those conclusions. 
Accordingly, we hold that the evidence was sufficient to support the
judgment. Bunyard's first issue is overruled. 

 Bunyard argues in his third issue that the trial court erred by
allowing lay opinion testimony on Garza's fault or negligence. Bunyard
complains specifically that certain parts of Valente's testimony
contained legal conclusions which he was not competent to present. 
However, the record reflects that Valente's testimony was presented on
September 22, 1998. Bunyard presented his first and only objection to
Valente's competence the following morning. To preserve a complaint
for review, the record must show that the party complaining made a
timely objection. Tex. R. App. P. 33.1(a)(1). An objection made one full
day after the admission of testimony is not timely and results in waiver. 
Bunyard's third issue is overruled. 

 By his second issue, Bunyard argues that the trial court erred by
allowing the admission of evidence of his use or non-use of seatbelts at
the time of this incident. Bunyard contends that the admission of this
testimony unfairly prejudiced his case. At the time of this incident, the
law of this State was that the "use or nonuse of a safety belt is not
admissible evidence in a civil trial." See Act of June 15, 1985, 69th
Leg., R.S., ch. 804, §1, 1985 Tex. Gen. Laws 2847, repealed by Act of
May 23, 1995, 74th Leg., R.S., ch. 165, §24(a), 1995 Tex. Gen. Laws
1871. However, the express language of the governing statute
provided that the provisions of the statute "relating to the operation of
vehicles refer exclusively to the operation of vehicles upon highways.
. . ." See former Tex. Rev. Civ. Stat. Ann. art. 6701d §21 (Vernon 1994). 
The statute further provided that a "highway" is the "entire width
between the boundary lines of every way publicly maintained when any
part thereof is open to the use of hte public for purposes of vehicular
travel." See former Tex. Rev. Civ. Stat. Ann. art. 6701d §13(a) (Vernon
1994). The record shows that the caliche roads on the Ranch were
neither publicly maintained nor open to the use of the public for 
vehicular travel. Accordingly, the limitation is inapplicable here. 
Bunyard's second issue is overruled.

 In his fourth issue, Bunyard argues that the "trial court erred by
failing to instruct the jury as to the duty of the driver of an automobile
in the claims of negligence against LaBarreta." Specifically, Bunyard
argues that he was entitled to have the jury instructed that he 

 has made claims against Richard Garza for his negligence
related to his erratic driving in an unsafe manner, and failing
to advise or warn his passengers of the danger of the rough
terrain, failing to exercise caution and care to protect his
passengers, failing to identify and avoid dangers in the
terrain, failing to operate the vehicle at a safe speed given
the terrain, [and] failing to keep a proper lookout. 


The record indicates that the jury was properly instructed with regard
to the meaning of "negligence," "ordinary care," and "proximate cause."


 The court should submit "such instructions and definitions as
shall be proper to enable the jury to render a verdict." Tex. R. Civ. P.
277. The trial court is given broad latitude in determining the propriety
of the questions, instructions, and definitions submitted to the jury. 
H.E. Butt Grocery Co. v. Bilotto, 985 S.W.2d 22, 23 (Tex. 1998). Absent
an abuse of that discretion, we will not reverse the trial court's
judgment. Thomas v. Oldham, 895 S.W.2d 352, 360 (Tex. 1995). 

 When the trial court refuses to submit a requested instruction or
definition, our review is focused upon whether the request was
reasonably necessary to enable the jury to render a proper verdict. Tex.
R. Civ. P. 277; Brookshire Bros., Inc. v. Lewis, 997 S.W.2d 908, 921
(Tex. App.--Beaumont 1999, no pet.). A trial court's charge "need not
and should not burden the jury with surplus instructions." Id. 

 The proposed instruction sought by Bunyard reiterates the specific
claims made in his petition. This proposed instruction constitutes a
surplusage which the trial court was not required to incorporate in the
charge. In a similar case, the court concluded that instructions similar
to those sought here by Bunyard "were not necessary for the jury to
render a proper verdict." Brookshire Bros., 997 S.W.2d at 921. We find
no error in the court's refusal to submit the requested instruction. 
Bunyard's fourth issue is overruled. 

 The judgment of the trial court is AFFIRMED.

 

 


 

 ROBERT J. SEERDEN, Chief Justice



Do not publish
.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 20th day of July, 2000.

 

1. The judgment was also rendered in favor of Stuart Sasser, owner
of La Barreta Company, and Kenedy Memorial Foundation and/or
Kenedy Ranch.