# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-20231
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

September 16, 2014

Lyle W. Cayce
Clerk

GEORGE CREVEN HOUSTON; CANDIS HOUSTON,

Plaintiffs−Appellants,

versus

SPX CORPORATION,

Defendant−Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-39

Before SMITH, WIENER, and ELROD, Circuit Judges.

PER CURIAM:*

George C. Houston and Candis Houston appeal a summary judgment in

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20231

favor of SPX Corporation ("SPX") in their action for gross negligence for the death of George A. Houston ("Houston"). After carefully reviewing the record, including the briefs of the parties and the district court's thorough and thoughtful opinion, we affirm.

I.

The plaintiffs are the surviving adult children of Houston, who was killed in the course and scope of his employment at SPX. The material facts surrounding his death are not in dispute.

Houston was killed from injuries sustained while installing a tool on a Bullard Vertical Turret Lathe. A machinist first downloads a program that controls the lathe's operations during the tool change. He then may modify the program as necessary and insert additional safety stops. To install a tool in this particular lathe (unlike the newer lathes at SPX) a machinist must physically enter the machine while it is connected to electrical power, because hydraulics are required to clamp and unclamp the tool.

During the installation process, Houston was working with Donovan Graham, a coworker whom he was training; Houston had been working with lathes since 1996, but Graham had only four months of experience. Everything Graham knew about lathes he had learned from Houston.

At the time of the accident, Houston had edited the programming for the lathe before Graham arrived for work. There is no evidence that the program Houston downloaded was defective or that Graham had modified it.

Graham testified that Houston gave him a walk-through of the installation plan: They would put the tool inside the machine and then push the Cycle Start button, which would lower the ram onto a wooden block and drive the tool into place. Although Graham thought that a stop code had been entered into the computer, such that the machine would not move any more

No. 14-20231

than necessary to install the tool, no installation stop code was found in the computer programming after the accident. The computer was actually set to clamp the tool into place and rotate the spindle.

Houston stood inside the machine as he installed the block of wood. While Houston was still inside, he ordered Graham to press the Cycle Start button. Graham asked Houston whether he was sure, and he said yes. No one but Graham heard that instruction.

When the lathe was activated, the turret began to spin as it came down, but it did not stop as they had planned. Houston died when it crushed his leg, forehead, and left arm. After the accident, the lathe was not in use until agents from the Occupational Safety and Health Administration conducted an investigation. The lathe was tested and found to be not defective; it had no history of malfunctioning.

The machine shop supervisor, Randy Yohner, testified that there may have been a miscommunication between Houston and Graham, because no one would activate a lathe while still inside. Yohner acknowledges, however, that Graham told him as early as twenty minutes after the accident that Houston said to start the lathe. After Houston was killed, Graham was inconsolable—he ran sixty feet and collapsed; the paramedics had to examine and comfort him.

The district court granted summary judgment in favor of SPX on the grounds that SPX was not grossly negligent and did not cause Houston's death. The Houstons challenge both of those conclusions on appeal.

## II.

We review a summary judgment *de novo*, applying the same standard as the district court. *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014). Summary judgment is proper only "if the movant shows that there is no

No. 14-20231

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When reviewing a summary judgment, we draw all reasonable factual inferences in the light most favorable to the nonmoving party. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).

III.

Houston's family has already recovered under the Texas worker's compensation statute. *See* TEX. LAB. CODE § 408.001. To recover more, it must prove that the employer was grossly negligent. TEX. LAB. CODE § 408.001(b). Gross negligence is an act or omission that involves (a) an objectively extreme degree of risk to others and (b) a knowing disregard of that risk. TEX. CIV. PRAC. & REM. CODE § 41.001 (11). But an employer has no duty to warn of obvious risks. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

SPX is responsible only for the gross negligence of its workers who (a) are corporate officers, (b) hire and fire subordinates, (c) perform duties that cannot be delegated, or (d) manage a department. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997). Neither party disputes that Yohner has enough responsibility to be a vice principal such that his acts or omissions are attributable to SPX. Plaintiffs do not challenge the district court's finding that Graham, a mere trainee, lacked the requisite degree of responsibility.

Plaintiffs must also prove that SPX's negligence was the proximate cause of Houston's injuries and death. Proximate cause has two elements: cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) (citation omitted). "Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Id.* (citations omitted). "Proximate cause is usually a question of fact to be decided by the jury, except where the circumstances are

4

such that in the opinion of the court reasonable minds could not arrive at a different conclusion." *Cave v. Texas & Pac. Ry. Co.*, 296 S.W.2d 558, 560 (Tex. Civ. App.—Eastland 1956, writ ref'd n.r.e.).

When Yohner asked Houston to change the tool on the lathe, Yohner knew that Houston would have to go inside the machine. Likewise, Yohner knew that electricity must continue to flow while Houston changed the tool. It is undisputed that other machines were available that would not have required Houston to enter the lathe, but Yohner could not have reasonably anticipated that the machine would be activated while Houston was inside it.

The accident happened after Houston had modified the programming and placed a wooden box inside the machine to catch the lowered ram. All the evidence indicates that Houston believed the ram would lower itself safely when Graham hit the Cycle Start button. The parties do not dispute that a reasonable machinist would exit the lathe before activating it. Houston had been working with lathes for sixteen years before the accident, and there was no reason for Yohner to think that Houston would install the tool in an unsafe manner.

Yohner's act of asking Houston to change the tool bit was not grossly negligent because it did not involve an objectively extreme degree of risk to others. Houston was a seasoned professional who was well aware of proper safety precautions. Furthermore, Yohner's actions were not the proximate cause of Houston's death because it was not reasonably foreseeable that Houston would install the tool in an unsafe manner.

Houston's death is a tragedy, but no reasonable jury would find that SPX was grossly negligent. The summary judgment is AFFIRMED.