Victor JONES and Delores Jones, husband and wife, personally and as Intestate heirs of Linda Irene Jones, deceased, Plaintiffs and Appellees,

v.

Lewis AHLBERG and Gail Hodgins, as officers of the City of Langdon, North Dakota, the City of Langdon, a municipal corporation, Greg Fetsch as a police officer of Cavalier County and Cavalier County, North Dakota, Defendants and Appellants.

Civ. No. 910374.

Supreme Court of North Dakota.

July 30, 1992.

Michael S. McIntee of McIntee Law Firm, Towner, for plaintiffs and appellees.

Bruce D. Quick of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendants and appellants.

VANDE WALLE, Justice.

This case involves a high-speed police chase with a tragic ending. We are asked to decide under what circumstances law enforcement officers and their employers can be held responsible when the pursuit of a suspected law violator results in injury or death to someone other than the suspect. We hold that a law enforcement officer and his or her employer can be held liable for injury to others resulting from the pursuit of a suspected law violator when the officer's conduct in initiating or continuing the pursuit constitutes gross negligence evincing a reckless disregard for the safety of others.

Victor and Delores Jones brought this action for damages against law enforcement officers and their employers, for the wrongful death of Victor and Delores's daughter, Linda, who, as a passenger in a vehicle being pursued by the officers, was killed when the vehicle rolled in the ditch after colliding with a pursuing State Highway Patrol vehicle. The case was tried to the court, without a jury. Victor and Delores were awarded damages, together with costs and disbursements, totaling $232,831.15. Although we hold that law enforcement officers can be held responsible for their gross negligence, we, nevertheless, reverse and remand for a new trial because the trial court did not clearly delineate the standard of liability that it used in deciding the case and because the court, as a matter of law, did not properly apply our comparative negligence statutes to this case.

On September 18, 1988, at about 1:00 a.m., Lewis Ahlberg, a Langdon city police officer, observed Dennis Sampson driving a vehicle on a state highway near Langdon. Ahlberg observed that Sampson "crossed back and forth" over the center line "about four times." Ahlberg followed Sampson's vehicle and stopped Sampson about one and one-half miles south of Langdon. Officer Gail Hodgins, in a separate vehicle, pulled up behind Ahlberg to give assistance.

Sampson failed field sobriety tests, and he was placed under arrest. The officers testified that Sampson was "verbally" uncooperative. The officers did not handcuff Sampson, hoping instead to persuade him to voluntarily get into the squad car. The officers observed that Sampson had a passenger in the car, who was apparently sleeping on the passenger side of the front seat. Sampson allegedly told the officers that the passenger was Linda, a friend of his, and he was taking her to Cando. Officer Ahlberg opened the driver's door of Sampson's car to talk with Linda. Suddenly, Sampson pushed Ahlberg aside, jumped into the driver's seat of the car, started the engine, and lurched ahead before Ahlberg or Hodgins could stop him. In the descriptive words of the trial court, "[t]he chase was on."

Officer Ahlberg contacted the police dispatcher, advising what had happened and requesting assistance. Eleven different units were called to help in the chase, which continued, according to the trial court, "for some 60 miles through three counties and one well populated town" at speeds of up to 100 miles per hour, but slowing to 35 or 40 miles per hour through the city limits of Cando. Early in the chase, Cavalier County Deputy, Greg Fetsch, responded to the call for assistance with his vehicle. After pursuing for a few miles, Hodgins returned to Langdon at Ahlberg's suggestion. Ahlberg and Fetsch then continued the pursuit, with Fetsch leading the chase. They were joined in the chase by two Cando police officers and North Dakota Highway Patrol officer, Duane Armstrong.

The pursuing law enforcement vehicles were using their flashing emergency lights during the chase. Highway patrolman Armstrong eventually assumed the lead position. The officers attempted to set roadblocks, but Sampson maneuvered to avoid them. North of Cando, Armstrong passed Sampson's vehicle and applied his brakes in

an attempt to stop Sampson. Sampson then attempted to pass Armstrong's vehicle by driving on the right shoulder of the roadway. The two vehicles collided at least once, and Sampson's car then careened into the ditch, and rolled. The chase was over. Linda died as a result of the injuries she received when the car rolled in the ditch.

Victor and Delores filed this wrongful death action against Officers Ahlberg, Hodgins, Fetsch, and their employers, the City of Langdon and Cavalier County. Patrolman Armstrong was not named as a party defendant in the lawsuit. Victor and Delores also sued Sampson for damages. That action was dismissed following a settlement between them and Sampson.

In support of their wrongful death action, Victor and Delores asserted that Officers Ahlberg and Hodgins negligently allowed Sampson to escape and to operate his vehicle after they had arrested him. They also asserted that Officers Ahlberg, Hodgins, and Fetsch "did cause a high speed chase to ensue which did cause Sampson to operate his vehicle in such a manner so as to lose control and cause [Linda's] death." Following an evidentiary hearing, the trial court issued a memorandum opinion and order awarding Victor and Delores substantial damages. Judgment was entered, and the defendants appealed.

The defendants assert that the trial court should have ruled, as a matter of law, that they are not liable in this case. More specifically, the defendants argue that the trial court: (1) should have applied a reckless disregard standard for deciding liability instead of a simple negligence standard; and (2) should have concluded, as a matter of law, that the defendants' actions did not constitute recklessness and that their actions were not the proximate cause of Linda's death.

In its memorandum opinion, the trial court did not clearly enunciate the standard of liability that it was using in this case. Some of the court's statements indicate that the court may have been using a simple negligence standard of liability:

"There was an out of control, unnecessary and unwarranted chase. There was

negligence and such was the proximate cause of the death. . . .

"The officers had a duty toward Jones to use reasonable care which they violated by failing to understand the very foreseeable consequences of their actions.

\*     \*     \*     \*     \*     \*

"Here, the pursuit was not reasonable and all the defendants were the proximate cause of death."

Other statements in the court's memorandum opinion indicate that the court may have been using a higher standard of liability, such as reckless disregard:

"The failure to effect the arrest was augmented by the dangerous and reckless disregard for human life.

\*     \*     \*     \*     \*     \*

"The operator of a police vehicle, even when exempted from traffic regulations, has a duty to drive with due regard for the safety of *all* persons and is responsible for the reckless disregard for the safety of others." (Emphasis in original.)

Because the appropriate standard of liability is that of gross negligence, we conclude that the trial court's failure to clearly delineate the standard of liability it applied in this case is grounds for reversal. We do, however, empathize with the trial court's struggle to apply an appropriate standard of liability. Our statutes do not provide a clear and concise standard of liability for police when their chase of a suspected law violator results in injury or death, and the courts in other jurisdictions have used differing standards of liability with conflicting results. *See* Joel E. Smith, J.D., Annotation, *Liability Of Governmental Unit Or Its Officers For Injury To Innocent Occupant Of Moving Vehicle, Or For Damage To Such Vehicle, As Result Of Police Chase*, 4 A.L.R. 4th 865 (1981).

Some jurisdictions apply a simple negligence standard of conduct to a pursuing officer, who must exercise reasonable care under the circumstances and whose failure to exercise reasonable care will subject the officer to liability for injuries resulting

from the pursuit. *See, e.g., Lee v. City of Omaha,* 209 Neb. 345, 307 N.W.2d 800, 803 (1981); *Fiser v. City of Ann Arbor,* 417 Mich. 461, 339 N.W.2d 413 (1983). Other jurisdictions require a higher standard for subjecting an officer to liability regarding decisions to initiate or continue a chase that result in injury or death. For example, the Wyoming Supreme Court in *DeWald v. State,* 719 P.2d 643, 650 (Wyo.1986), concluded that an officer's decision to pursue cannot be the proximate cause of injuries resulting from a police chase unless the circumstances indicate "extreme or outrageous conduct by the officer." In *Brown v. City of Pinellas Park,* 557 So.2d 161, 172 (Fla.App.1990), the Florida appellate court concluded that to be actionable the officer's conduct in continuing a pursuit must be "reckless" and that the officer must have a reasonable opportunity to terminate the pursuit after the danger from its continuation becomes clearly apparent. If the officer continues to pursue in total disregard of the danger created, liability will then attach.

■ In North Dakota, law enforcement officers have a statutory right to pursue a person fleeing an arrest:

"*When defendant resists, force necessary may be used to make arrest. If,* after notice of intention to arrest the defendant, he either flees or forcibly resists, the officer may use all necessary means to effect the arrest."

Section 29-06-13, N.D.C.C. In making an arrest, an officer is under no obligation to retreat but has the legal right to press forward and accomplish the arrest. *Schell v. Collis,* 83 N.W.2d 422 (N.D.1957).

■ However, we agree with the Nebraska Supreme Court that "the duty of law enforcement officers to apprehend violators of the law must be balanced with a duty of care to the general public as well." *Lee, supra,* 307 N.W.2d at 803. We also agree with the District Court of Appeals of Florida in *Brown v. City of Pinellas Park, supra,* 557 So.2d at 167, that the courts must recognize a duty of care by law enforcement officers regarding decisions to pursue and to continue pursuit of law violators, otherwise:

"[T]he officers would in effect have ... virtually carte blanche authority to conduct and continue pursuits of lawbreakers in any manner they chose despite serious, clearly apparent, and easily avoidable dangers to innocent bystanders. That should not be ... the law."

"Public safety should not be thrown to the winds in the heat of the chase." *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex. 1992). At least one author has suggested that the matter is of constitutional dimension. Kathryn R. Urbonya, *The Constitutionality of High-Speed Pursuits Under the Fourth and Fourteenth Amendments,* St. Louis U.L.J., Vol. 35, No. 2 (1991).

To determine the appropriate standard of liability for police pursuits we are guided by several statutes. Generally, a political subdivision is liable for damages caused by the "negligence" of an employee acting within the scope of employment "under circumstances where the employee would be personally liable to a claimant in accordance with the laws of this state...." Section 32-12.1-03, N.D.C.C. However, an employee is personally liable for conduct occurring within the scope of employment only if the employee's conduct constitutes "reckless or grossly negligent conduct, or willful or wanton misconduct." Section 32-12.1-04, N.D.C.C. There are other more specific statutes that are also relevant.

Chapter 39-09, N.D.C.C., sets speed restrictions for motor vehicle operation. Under Section 39-09-06, N.D.C.C., class A emergency vehicles, including vehicles operated by law enforcement personnel, are exempted from the speed limitations, but the provision expressly states that the exemptions "do not protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others." Under Section 39-10-03, N.D.C.C., a class A emergency vehicle is also exempted from adhering to other specified rules of the road "only ... when the ... vehicle is in pursuit of ... a suspected violator requiring the use of ..." the exemptions. That

section also states that the driver of the emergency vehicle may exceed the speed limit "so long as he does not endanger life or property."

Construed together, the foregoing statutes are helpful for determining the appropriate standard of liability here. Section 29–06–13, N.D.C.C., allows an officer to use "all necessary means" to effect an arrest on one who attempts to resist or flee the arrest. Under Chapter 39–09, N.D.C.C., emergency vehicles in pursuit are exempted from speed limit restrictions and certain other rules of the road, but the drivers of these vehicles are not allowed to "endanger life or property" and are held accountable for actions constituting a "reckless disregard of the safety of others." We conclude that these provisions manifest a legislative intent to hold law enforcement officers accountable for their actions in pursuing suspected law violators, but that a higher standard than simple negligence applies. A law enforcement officer has the statutory authority to pursue a person who flees from an arrest. However, in conducting that pursuit the officer and his employer will be held accountable, and be subject to liability for damages incurred as a result of the pursuit, if the officer's conduct constitutes gross negligence.

■ Under prior statutory law, a guest passenger in an automobile was required to prove gross negligence by the driver to receive damages for injuries sustained while riding with the driver. In that context, we stated that the term "gross," as applied to the negligence of the motorist, referred to the mental attitude of the motorist "in regard to the consequences which he should have foreseen and implies such gross recklessness as shows indifference to the consequences." *Holcomb v. Striebel,* 133 N.W.2d 435, 438 (N.D.1965). Gross negligence is a lack of care which is practically willful in its nature and evinces a reckless temperament. *Rubbelke v. Jacobsen,* 66 N.D. 720, 268 N.W. 675 (1936).

■ To constitute gross negligence, an officer's conduct in pursuing a suspected law violator must manifest a mental attitude of indifference that evinces a reckless disregard toward the safety and well being of others. Victor and Delores have alleged that the officers wrongfully continued the pursuit when it became clear that Sampson was not going to stop and that the pursuit was endangering the lives of innocent persons. In deciding whether the officers were grossly negligent in continuing the pursuit, appropriate factors to consider include the reason(s) for pursuing the fleeing vehicle, the nature of the suspected law violation, the speed and duration of the pursuit, the weather and road conditions, the presence of innocent passengers or pedestrians, and the presence of other traffic in the area. *See Fiser, supra,* 339 N.W.2d at 417.

The record does not clearly reflect that liability was determined under a gross negligence standard. Therefore, we conclude that this case must be reversed and remanded for a new trial.

■ The defendants assert that, as a matter of law, the officers' conduct in pursuing Sampson could not be a proximate cause of the accident and Linda's resulting death. We disagree. The question of proximate cause is one of fact and, when determined by the trial court as the factfinder, will not be overturned on appeal unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. *Tom Beuchler Construction v. City of Williston,* 413 N.W.2d 336 (N.D. 1987). Proximate cause is that cause which, as a natural and continuous sequence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred. *Andrews v. O'Hearn,* 387 N.W.2d 716 (N.D.1986). The negligence or other wrongful conduct of two or more persons may contribute concurrently as the proximate causes of an injury, and to be a proximate cause of an injury one's conduct need not be the last cause nor the sole cause of the injury. *Id.,* 387 N.W.2d at 727. To warrant a finding that one's conduct is the proximate cause of an injury, it must appear that the injury was the natural and probable result of the conduct and that it ought to have been foreseen or reasonably anticipated by the defendant as

a probable result of the conduct. *Moum v. Maercklein,* 201 N.W.2d 399 (N.D.1972).

We agree with the reasoning of those courts which, under factual circumstances similar to this case, have concluded that reasonable persons could disagree on the question of proximate cause and that the question, therefore, must be decided by the factfinder. In *Brown v. City of Pinellas Park, supra,* 557 So.2d at 176–177, a case involving a high speed police chase resulting in the pursued vehicle striking another vehicle, thereby killing the plaintiffs' decedents, the Florida appellate court concluded that the issue of proximate cause was for the jury:

"[W]e conclude that it should not be ruled at this stage that as a matter of law the driving of [the pursued driver] constituted the sole and proximate cause of the collision between him and appellants' decedents. Proximate cause depends upon foreseeability....

"Courts intervene on the proximate cause issue only when reasonable men could not disagree in that regard.... For present purposes it cannot in our view be concluded that reasonable men would agree that it was not foreseeable to the officers that [the pursued driver's] vehicle would collide with that of an innocent bystander like that of decedents. *See Gibson v. Avis Rent–A–Car System, Inc.,* 386 So.2d 520, 522 (Fla.1980) ('If an intervening cause is foreseeable the original negligent actor may still be held liable. The question of whether or not an intervening cause is foreseeable is for the trier of fact.')."

In similar factual circumstances, the Michigan Supreme Court also concluded, in *Fiser v. City of Ann Arbor,* 417 Mich. 461, 339 N.W.2d 413, 418–419 (1983), that the question of proximate cause was for the factfinder, and that reasonable men could determine that the negligent conduct of the pursued driver did not sever the causal connection between the law enforcement officers' negligent conduct and the injuries sustained by the plaintiff, an innocent third-party victim:

"Plaintiff's contention in the present case is that the reckless and negligent conduct of Lehman was the result, in part, of the way in which he was being pursued by the officers. Plaintiff alleges that the defendants' pursuit of Lehman at high speeds and without regard for traffic laws caused Lehman to drive negligently and, in an effort to evade his pursuers, to recklessly turn his car, causing a collision with plaintiff's vehicle.

"We agree that the excessive speed of the Lehman vehicle could be said to have resulted from the fact that he was being pursued by the police and that it was this high speed which caused him to lose control of the car.

"Under the facts of this case, we hold that reasonable men might conclude that the pursuit by defendants Miller and Lunsford was not too remote a cause of plaintiff's injuries and that the negligent conduct of Michael Lehman did not sever that causal connection.

\*       \*       \*       \*       \*       \*

"Plaintiff's claims of negligence and proximate causation of his injuries on the part of defendants City of Ann Arbor, Officer Miller, and Sergeant Lunsford are properly questions of fact for the jury."

*See also Travis v. City of Mesquite,* 830 S.W.2d 94 (Tex.1992).

We likewise conclude that, under the circumstances of this case, the question of proximate cause is for the factfinder. We assume for purposes of deciding this issue, that the law enforcement officers' decision to continue the pursuit constituted gross negligence. With that assumption, reasonable persons could conclude that but for the prolonged high speed pursuit Sampson would not have driven his vehicle at high speeds on the right shoulder of the highway, causing it to collide with one of the law enforcement vehicles and then roll into the ditch. Reasonable persons could further conclude, therefore, that Linda's death could have been reasonably anticipated by the law enforcement officers as a natural and probable consequence of their actions.

The defendants also allege that "if" the trial court found that the officers acted with reckless disregard or in a grossly negligent manner, that finding was clearly erroneous, and, therefore, we should reverse and order judgment be entered in their favor. We have already stated that the case must be reversed because the standard of liability used by the trial court is unclear. Consequently, we decline to resolve this issue. We note, however, that the record contains sufficient evidence for the factfinder to conclude that the officers' conduct was grossly negligent. The officers knew Sampson's identity before the pursuit began, and there is evidence that Sampson told them he was going to take his passenger, Linda, to her home in Cando. Sampson refused to stop after many miles of being pursued, even though he was required to maneuver to avoid roadblocks and to travel at high speeds of up to 100 miles per hour. Nevertheless, the chase continued. It continued in spite of warnings by Fetsch that perhaps they should "call this chase off before someone gets killed."

The defendants assert that the trial court also erred in failing to allocate any percentage of fault against Sampson. We agree that the trial court's failure to assess a percentage of fault to Sampson constitutes reversible error.

Under our comparative negligence law, Section 9–10–07, N.D.C.C., the fault of all persons involved must be compared, and the plaintiff can recover only if the plaintiff's share of the negligence is less than the percentage of negligence attributable to the negligent defendants. When the plaintiff settles with and releases one of the alleged tortfeasors and then litigates against other alleged tortfeasors, the factfinder must determine the percentage of negligence attributable to the released tortfeasor as well as that attributable to the defendants. *Bartels v. City of Williston*, 276 N.W.2d 113 (N.D.1979). There was evidence of Sampson's negligence before the court. *Compare Nelson v. Trinity Medical Center*, 419 N.W.2d 886 (N.D. 1988) (failure to introduce evidence of settling doctors' negligence precluded jury consideration of doctors' negligence by special verdict form).

The trial court did not follow this directive in *Bartels*. It made no assessment of negligence attributable to Sampson. The only reference in the trial court's memorandum opinion to Sampson's conduct was that, "Sampson and the hot pursuit were not the sole proximate causes of the accident." The court then wrote, "[t]he operator of a police vehicle, even when exempted from traffic regulations, has a duty to drive with due regard for the safety of *all* persons and is responsible for the reckless disregard for the safety of others." [Emphasis in original.] The court's intended meaning of the foregoing statements is unclear. Perhaps the court was referring to the responsibility of highway patrolman Armstrong, whose vehicle collided with Sampson's vehicle immediately before Sampson entered the ditch. Nevertheless, the court failed to assess any percentage of negligence to Sampson or to patrolman Armstrong. The court should have made an assessment of both Armstrong and Sampson's fault, even though they were not named defendants in this action.

We conclude, as a matter of law, that it was reversible error for the court to fail to attribute any percentage of fault to Sampson. Sampson fled from his arrest, refused to stop in spite of extraordinary police attempts to have him do so, drove his vehicle at speeds of up to 100 miles per hour, and ultimately rolled his vehicle in the ditch attempting to pass patrolman Armstrong's vehicle on the right shoulder of the highway while traveling at high speed. Under those circumstances, we conclude that reasonable persons could not disagree that Sampson's conduct was a proximate cause of Linda's death and that some percentage of fault must be attributed to him.

The defendants have raised other factual issues about the court's assessment of fault among the parties and about the size of the damage award. In view of our reversal of the judgment and remand for a new trial, it is unnecessary to address or

resolve those issues, because the factual questions will be redetermined on the evidence presented at the new trial.

The defendants have requested a new judge to try the case on remand. Because the case is being remanded for a retrial of all factual issues, we deem it appropriate to grant the request. *See Paulson v. Meinke,* 352 N.W.2d 191 (N.D.1984). Therefore, we remand the case for a new trial before a judge appointed under Administrative Rule 15.

Reversed and remanded.

ERICKSTAD, C.J., MESCHKE, J., and BENNY A. GRAFF, District Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, and GRAFF, District Judge, sitting in place of LEVINE, J., and JOHNSON, J., disqualified.

VERNON R. PEDERSON, Surrogate Judge, concurring specially.

I concur in the result reached by the majority and in most of the statements in the opinion. Not having heard the testimony of any of the witnesses, and not even having read the transcript, I am not able to reach a conclusion, based upon hypothetical assumptions, that a reasonable person (or a jury), acting as fact finder, could conclude that Linda's death was even remotely a natural and probable consequence of any decision made by Lewis Ahlberg or Gail Hodgins. Regardless of the "botched" attempt to arrest, I know of no poisonous tree doctrine that can provide the missing privity. That part of the majority opinion is dicta and could be the basis for misunderstanding at the retrial, especially if the newly assigned judge believes, as I do, that this is a case that ought to be tried by a jury.