Sherri LOMMEN, Appellant,

v.

The CITY OF EAST GRAND FORKS,
et al., Respondents.

No. C9–94–671.

Court of Appeals of Minnesota.

Sept. 27, 1994.

. Review Granted Dec. 2, 1994.

Richard A. Ohlsen, Moosbrugger, Ohlsen, Dvorak & Carter, Grand Forks, ND, for appellant.

Barry P. Hogan, Jeffries, Olson, Flom, Oppegard & Hogan, Moorhead, for respondent.

Considered and decided by DAVIES, P.J., SCHUMACHER and AMUNDSON, JJ.

## OPINION

DAVIES, Judge.

Sherri Lommen appeals dismissal of her action based on a ruling that Minnesota immunity law, rather than North Dakota law, applies to a Minnesota police officer whose squad car injured her in North Dakota. We affirm.

## FACTS

While on patrol in East Grand Forks, respondent Vernon Rasmusson became suspicious of a pickup truck. Officer Rasmusson called in the license number and was informed that the pickup was stolen. Rasmusson then pursued the pickup at high speed across the state line into Grand Forks, North Dakota. While proceeding through a controlled intersection in Grand Forks, Rasmusson collided with a vehicle in which appellant Lommen was a passenger, injuring her.

Lommen filed suit for damages in Minnesota against Rasmusson and his employer, respondent City of East Grand Forks (the City). Respondents moved for dismissal on the basis of immunity. The district court dismissed the suit, concluding that Minnesota immunity law—which would bar Lommen's suit—applies. This appeal followed.

## ISSUE

Did the district court err in applying Minnesota's law of immunity?

## ANALYSIS

■ The first issue is "whether the choice of one state's law over another's creates an actual conflict." *Jepson v. General Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn.1994). In the absence of any conflict, the forum may apply its own law. *Davis v. Outboard Marine Corp.*, 415 N.W.2d 719, 723 (Minn.App. 1987), *pet. for rev. denied* (Minn. Jan. 28, 1988).

■ Under Minnesota law, Officer Rasmusson would be protected by official immunity unless his actions were "willful or malicious," whereas under North Dakota law an officer would be protected unless his actions constituted "gross negligence."[1] We believe there is some potential (although slight) for the police officer immunity rules of the two states to affect appellant differently. Thus, a choice of law is advisable.

---

1. Under Minnesota law, an officer engaged in a high-speed pursuit is protected by common law "official immunity" unless his actions were "willful or malicious." *Pletan v. Gaines*, 494 N.W.2d 38, 40–41 (Minn.1992). Lommen concedes that Rasmusson's conduct in colliding with her car was not willful or malicious. Under North Dakota law, employees are liable in their personal capacity for acts or omissions within the scope of their employment only if those acts or omissions constitute "reckless or grossly negligent conduct, or willful or wanton misconduct." N.D.Cent. Code § 32–12.1–04 (Supp.1993). Thus, a police officer in North Dakota is subject to liability for injuries stemming from pursuit of a suspect if his actions constitute "gross negligence." *Jones v. Ahlberg*, 489 N.W.2d 576, 581 (N.D.1992). The North Dakota Supreme Court has defined "gross

negligence" in this context as "a mental attitude of indifference that evinces a reckless disregard toward the safety and well being of others." *Id.* But that court has also stated that "[g]ross negligence is a lack of care that is practically willful in its nature and evinces a reckless temperament." *Id.* Thus, North Dakota's definition of "gross negligence" seems to approach "willful," but may be somewhat different because under Minnesota's law of official immunity, "malice"— which is synonymous with "willful"—

"means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right."

*Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991) (quoting *Carnes v. St. Paul Union Stockyards Co.*, 164 Minn. 457, 462, 205 N.W. 630, 631 (1925)).

Perhaps more importantly, however, an officer's immunity extends to the employing municipality under Minnesota law. *Pletan v. Gaines,* 494 N.W.2d 38, 43 (Minn.1992). But in North Dakota the municipality may be liable for a police officer's actions within the scope of employment regardless of the officer's immunity. *Binstock v. Fort Yates Pub. Sch. Dist. No. 4,* 463 N.W.2d 837, 842 (N.D. 1990) (chapter 32–12.1 does not immunize municipalities from "injuries caused by employees acting within the scope of their employment"). Accordingly, we conclude that, as to municipal immunity, there is undoubtedly a conflict that makes a choice of law necessary.

■ The next consideration is whether "the law of both states can be constitutionally applied." *Jepson,* 513 N.W.2d at 469. Under existing constitutional restraints, to apply the law of a particular state,

> that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.

*Allstate Ins. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). Here, there are sufficient contacts with North Dakota and Minnesota to justify—against constitutional attack—applying the law of either state.

■ To make the actual choice of law, Minnesota has adopted Professor Robert A. Leflar's approach. *Milkovich v. Saari,* 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973). Leflar identified five choice-influencing considerations: (1) predictability of result, (2) maintenance of interstate order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interest, and (5) application of the better rule of law. *Id.* The relative importance among the five considerations will vary according to the particular legal issue. Robert A. Leflar, *Choice-Influencing Considerations in Conflicts Law,* 41 N.Y.U.L.Rev. 267, 282 (1966) [hereinafter, Leflar, *Considerations* ].

■ The Leflar approach requires courts to critically analyze each case and, "to be true to the method rather than to seek superficial factual analogies between cases." *Jepson,* 513 N.W.2d at 470. Thus, the task here is to identify and evaluate the meaningful contacts with respect to the actual issue (the rules in conflict). Although this case arises from an auto accident, the conflict concerns rules of governmental immunity.

## 1. Predictability of Result

The objective of the predictability factor is to fulfill the parties' justified expectations. Leflar, *Considerations, supra,* at 297. Tort actions generally do not implicate party expectations because torts stem from unplanned accidents. *Jepson,* 513 N.W.2d at 470. Lommen argues, however, that she had a valid expectation that North Dakota law would apply to accidents within North Dakota. This argument erroneously assumes that citizens plan their motoring activities with knowledge of, and reliance upon, doctrines of immunity and a territorialist choice-of-law methodology.

Lommen's related argument—based on North Dakota statutes concerning vehicular operation—that as a North Dakota citizen she had an "expectation" that she would not be exposed to dangerous police activities absent a means of recovery, is also meritless because North Dakota's own immunity law often precludes recovery.

In contrast, we believe that Rasmusson (and East Grand Forks) had a substantial expectation of on-the-job tort immunity. Police officers understand that they enjoy a certain amount of immunity in performing their jobs. We are reluctant to change the rules of immunity when officers cross state lines; to do so would compromise the efficacy of interstate pursuits.

■ Lommen argues that Rasmusson might have expected that North Dakota laws would apply once he knowingly entered North Dakota. But a police officer's willingness to pursue suspects across state lines should not be restricted by a rule that would subject the officer to differing standards of immunity based on the fortuitous fact of where someone is injured. Lommen's argument wrongly assumes that Minnesota police officers (and the employing municipality) ex-

pect that a strictly territorialist choice-of-law methodology will necessarily control any issue stemming from an accident in another state.

Thus, we believe that this consideration points toward application of Minnesota law.

### 2. Maintenance of Interstate Order

This next factor primarily concerns,

whether the application of Minnesota law would show manifest disrespect for North Dakota's sovereignty· or impede the interstate movement of people and goods.

*Jepson*, 513 N.W.2d at 471.

In this case, application of Minnesota law would not affect the interstate flow of goods. Nor do we think that application of Minnesota law would constitute an affront to North Dakota's sovereignty; Minnesota's interest in providing limited immunity for its officials and cities is sufficiently apparent that North Dakota would not be offended by application of Minnesota law.

The dissent argues that application of Minnesota law ignores North Dakota's interest in the compensation of its injured residents. We recognize that North Dakota has a valid interest in the compensation of a North Dakota resident. But North Dakota's own immunity law already significantly limits North Dakota's compensatory interest. And application of Minnesota law would not license Minnesota officers to injure North Dakota residents with impunity; Minnesota's immunity doctrine is limited by the "willful and malicious" standard—one that is proba-

bly not that different from North Dakota's "gross negligence" standard.[2]

It is interesting that North Dakota does not follow the territorialist ("lex loci") approach under which rules of the jurisdiction where the accident occurred are applied exclusively, but rather, makes choices issue-by-issue. And North Dakota, like Minnesota, employs the Leflar approach to make those issue-by-issue choices. *Vigen Constr. v. Millers Nat'l Ins.*, 436 N.W.2d 254, 256 (N.D. 1989). We believe a North Dakota court, applying the Leflar methodology, would likely also choose Minnesota immunity law. Thus, North Dakota should not be offended by our application of the Minnesota rule. And application of Minnesota law is not inconsistent with the *Jepson* directive to "strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong." *Jepson*, 513 N.W.2d at 471.

One particular concern in choice-of-law methodology is to minimize forum shopping designed to influence choice of law. *Id.* The City asserts that Lommen might have filed suit in Minnesota to avoid North Dakota's seat belt defense and because North Dakota does not provide for joint and several liability; the City argues that Minnesota law should thus apply simply because Lommen voluntarily chose the Minnesota forum. To the extent Lommen may have been forum shopping, we note that we do not prefer Minnesota law on any *substantive* issue simply because Minnesota is the forum. *See* Robert A. Leflar, *American Conflicts Law* § 90, at 182 (3d ed. 1977) ("Mere forum

**2.** We also question the dissent's reliance on *Biscoe v. Arlington County*, 738 F.2d 1352 (D.C.Cir. 1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985). In *Biscoe*, a Virginia officer pursued a suspect into D.C. where the officer injured a third party. But the third party filed suit in *D.C.*—where he was injured, not in Virginia, the state of the officer's jurisdiction. The decision was not decided explicitly on choice of law rules, but rather as a constitutional law question. The court held—on the basis of comity and full faith and credit—that D.C. need not apply Virginia's immunity law. *Id.* at 1359. The issue in *Biscoe* was stated as whether the D.C. court was *required* to apply Virginia's law of immunity. Here, in contrast, Lommen filed suit in Minnesota, not in North Dakota, where she

was injured. And the question is presented—properly—as a choice of law issue, not a constitutional law question. Thus, the issue is whether a Minnesota court *should* apply its own law of immunity to its own officers.

Further, in *Biscoe* the court—seeming to short circuit any real choice-of-law process—stated that had the injured party filed in Virginia—the state of the officer's jurisdiction (as Lommen did here)—Virginia would likely apply its own law:

[H]ad this case been brought in Virginia state court, we would not expect that Virginia would apply District rules on immunity * * *, but instead would treat the issue as a threshold one of amenability to suit controlled by Virginia law.

*Id.* at 1360 n. 4.

preference, as such and by itself, is not a valid *reason* for any choice-of-law result." (emphasis in original)). Choice of forum ought not determine choice of law.

### 3. Simplification of the Judicial Task

■ This next factor concerns the forum court's ability to discern and apply the law of another state as compared to its own law. This factor largely focuses on the necessity of allowing the forum state to apply its own procedural law. *See* Leflar, *Considerations, supra,* at 288 (judicial efficiency favors forum application of own procedural rules unless outcome determinative).[3] Since the immunity issue is not procedural, the "judicial task" consideration is of little or no weight in our analysis.

### 4. Advancement of the Forum's Governmental Interest

We come now to the consideration decisive in this case—the relative policy interests of the two states.

"Minnesota places great value in compensating tort victims." *Jepson,* 513 N.W.2d at 472. But this interest is necessarily limited by Minnesota's immunity doctrine, which, in order to facilitate the unhindered operation of government, usually denies compensation to those injured by municipal officials.

Lommen argues that immunity should give way to Minnesota's interest in compensating tort victims. But Lommen is simply rearguing the propriety of recognizing official immunity in police-chase cases—a decision our supreme court has already made in *Pletan.* Under *Pletan,* Minnesota's interest in facilitating compensation yields to its interest in fostering effective pursuits by the police.

Most importantly, the issue of government immunity sets this case apart from a conflict case involving a dispute between private parties. Public-employee immunity concerns the relationship between public officials and their employers (and taxpayers). Because here those relationships are seated in Minne-sota, both implicate Minnesota's sovereignty in a particularly direct manner. Accordingly, unlike a conflict case involving two private parties, here application of North Dakota law would infringe on Minnesota's power to define the tort immunity it gives within the public employee/employer relationship.

Minnesota's interest exceeds North Dakota's because the most relevant relationship is foreign to North Dakota and, as discussed above, North Dakota's interest in fully compensating tort victims is limited by its own immunity doctrine. Application of North Dakota law would not ensure Lommen's recovery because it is hardly evident that Rasmusson's conduct would constitute "gross negligence" as defined by North Dakota law.

This consideration weighs substantially in favor of applying Minnesota law.

### 5. Better Rule of Law

■ The final consideration, under Leflar, is whether Minnesota or North Dakota has the better rule of law in "an objective sense." *Jepson,* 513 N.W.2d at 472. By "better," Leflar meant the rule that made "good socioeconomic sense for the time when the court speaks." *Id.* at 473 (quoting Robert A. Leflar, *Conflicts Law: More on Choice–Influencing Considerations,* 54 Cal.L.Rev. 1584, 1588 (1966)). In *Jepson,* the supreme court noted that "[s]ometimes different laws are neither better nor worse in an objective way, just different." *Id.* The court concluded that *Jepson* was such a case.

We here likewise conclude that neither Minnesota's nor North Dakota's law is "better" than the other, measured by current "socio-economic sense." Unlike, for example, the issues of guest statutes or married-women's contracts (which pervaded choice-of-law cases and scholarships when Leflar proposed this factor), here neither state's immunity law is demonstrably antiquated or plainly unfair. We think the rules of the two states simply differ, neither is necessarily better or

---

**3.** We believe that any difficulty in ascertaining or applying a substantive rule of another state is better addressed through certification of the question, rather than by rote application of fo-rum law. *See* Unif.Cert. of Questions of Law Act §§ 1, 8, 12 U.L.A. 52 (1990) (codified as Minn. Stat. § 480.061).

worse than the other. Accordingly, this consideration is of no relevance in our analysis.[4]

We conclude that overall the relevant considerations favor application of Minnesota law. The only facts that would suggest a contrary result are Lommen's North Dakota citizenship and the North Dakota situs of the accident. But Minnesota's ability to define the immunity of its own officials and municipalities should not vary according to the fortuitous facts of either the location of the accident or the citizenship of the injured party.

## DECISION

The district court properly applied Minnesota's law of immunity to determine a Minnesota police officer's liability for injuries sustained by a North Dakota resident in North Dakota.

**Affirmed.**

AMUNDSON, Judge (dissenting).

Because I believe that protecting the interests of the injured party is more important than protecting the interests of the police officer and the municipality, I respectfully dissent.

In a factually similar case, *Biscoe v. Arlington County*, 738 F.2d 1352 (D.C.Cir. 1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985), an innocent bystander who worked in the District of Columbia but lived in a Maryland suburb sued a Virginia county and one of its police officers for injuries he sustained due to an alleged negligent high-speed police pursuit of a suspected bank robber into the District of Columbia.

The court noted that there was a true conflict of law—under Virginia law, counties are fully immune from suit in tort, but under District of Columbia law, the District enjoys immunity from suit only if the actions in question were committed in the exercise of a "discretionary" function. *Id.* at 1357. The District of Columbia uses the "governmental interest analysis" approach to resolve choice of law questions. *Id.* at 1360. That approach requires a court to evaluate the policies underlying the applicable conflicting laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case. *Id.* Where each state would have an interest in application of its own law to the facts, a true conflict exists and the law of the jurisdiction with the stronger interest applies. *Id.*

The court observed that the immunity of Virginia's counties reflects the state's concern for the financial integrity of its counties (which, it noted, "can amply be met with the purchase of liability insurance"), as well as the concern that the prospect of liability will deter police officers from proper performance of their duties.[1] *Id.* The court noted that the concern for deterrence was "weak, if existent" and it was only left with Virginia's concern for the economic well-being of its counties. *Id.* at 1361. The court observed that this concern was not compelling, since it was limited to the rare tort suit arising out of acts outside Virginia, for which the county could purchase liability insurance. *Id.*

The court observed that a governmental entity's waiver of immunity signifies its dual interests in deterrence of potential tortfeasors and compensation of injured parties. *Id.* The court stated that "as the site of most of the relevant conduct and all the injury" the District had a strong interest in

---

4. We also note that the Minnesota Supreme Court has given the "better law" consideration no significant weight in a case for more than a decade—since its 1981 decision in *Bigelow v. Halloran*, 313 N.W.2d 10 (Minn.1981).

1. The court stated these interests were considerably weakened because: (1) Virginia police officers are not immune from liability in this context, and their personal amenability to suit accomplishes at least some of the deterrence that it is feared would result if the county were liable as well; (2) under District of Columbia law, the county is liable only for negligent performance of nondiscretionary acts, which by definition leave the governmental actor little choice on procedure—the only actions deterred would be violations of a state's orders to its employees; (3) much as the prospect of liability might thwart discretionary decision-making, it may also deter misconduct; and (4) the State of Virginia had recently waived its immunity from suit in tort in certain cases, though it limited the amount recoverable. *Id.* at 1360–61.

deterring such conduct. *Id.* (citing Restatement (Second) of Conflict of Laws § 146 cmt. d (1971)). The court noted that the defendant's acts created the precise danger to life and property that local regulations sought to prevent, and liability would discourage such acts. *Id.* The court also noted that the compensatory policy has the greatest relevance when the mishap occurs in the District and when District residents are plaintiffs.[2] *Id.* The court also relied on prior District of Columbia precedent that "evidenced an unwillingness to embrace Virginia's sovereign immunity rules." *Id.* at 1362.

The court concluded that the District of Columbia's immunity rules would apply or Virginia would have to fashion an exception based on its own policies. *Id.*

In addition, as recognized by the court in *Biscoe,* a determination that the immunity law of the state in which the accident occurred would be consistent with the Restatement of Conflict of Laws. The Restatement provides:

> In the majority of instances, the actor's conduct, which may consist either of action or non-action, and the personal injury will occur in the same state. In such instances, the local law of this state will usually be applied to determine most issues involving the tort. This state will usually be the state of dominant interest, since the two principal elements of the tort, namely, conduct and injury, occurred within its territory. The state where the defendant's conduct occurs has the dominant interest in regulating it and in determining whether it is tortious in character. Similarly, the state where the injury occurs will, usually at least, have the dominant interest in determining whether the interest affected is entitled to legal protection.

Restatement (Second) of Conflict of Law § 146 cmt. d (1971) (citation omitted).

I believe that in this case, application of Minnesota immunity law would subvert rather than sustain North Dakota's interests where Minnesota's interests are weaker. *See*

*Jepson v. General Casualty Co.,* 513 N.W.2d 467, 471 (Minn.1994) (an aspect of the "maintenance of interstate order" is to maintain a coherent legal system in which "courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong"). As one commentator stated:

> Deference to sister state law in situations in which the sister state's substantial concern with the problem gives it a real interest in having its law applied, even though the forum state also has an identifiable interest, will sometimes usefully further this aspect of the law's total task [interstate order]. * * * It must be recognized that if nearly all of a transaction's significant contacts are with one state (X), yet the forum state (F) applies its own law to the transaction despite its lesser contacts, resentment in X may induce later retaliation in kind. Avoidance of the interstate friction that can develop from this sort of retaliatory comity is a proper choice-of-law objective.

Robert A. Leflar, *Choice–Influencing Considerations in Conflicts Law,* 41 N.Y.U.L.Rev. 267, 286–87 (1966).

I can conceive of no situation more likely to produce such friction than the perception on the part of citizens of one state that police officers of a neighboring state (who unlike any other citizens of the state, are given the discretion of using force up to deadly force) can come to their state and endanger life and limb without fear of liability. Thus, I would hold that the immunity law of the state in which the alleged tortious conduct occurred and the residence of the injured party, North Dakota, should apply in this case.

---

**2.** The injured party in *Biscoe* lived in Maryland but worked in the District of Columbia. The court cited authority recognizing the District's unique interest in protecting persons who lived in the surrounding suburbs and worked in the District. *Biscoe,* 738 F.2d at 1361.