# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 194

John Sadek and Tammy Sadek, as surviving parents
of Andrew Sadek on behalf of all heirs-at-law,
and the Estate of Andrew Sadek,                    Plaintiffs and Appellants

  v.

Jason Weber, individually and as a Richland
County Sheriff's Deputy and Task Force Officer
of the South East Multi County Agency Narcotics
Task Force, and Richland County, North Dakota,
a political subdivision,                           Defendants and Appellees

## No. 20190216

Appeal from the District Court of Richland County, Southeast Judicial District,
the Honorable Jay A. Schmitz, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen and
Justices McEvers and Tufte joined. Justice VandeWalle filed a dissenting
opinion.

Tatum O'Brien (argued) and Timothy M. O'Keeffe (appeared), Fargo, ND, for
plaintiffs and appellants.

Corey J. Quinton (argued) and Tyler S. Carlson (appeared), Fargo, ND, for
defendants and appellees.

**Crothers, Justice.**

[¶1]   John and Tammy Sadek, the surviving parents of Andrew Sadek, appeal the district court's summary judgment, dismissing their claims against Jason Weber and Richland County. We affirm.

I

[¶2]   Defendant Jason Weber is a deputy with the Richland County Sheriff's Office and a member of the South East Multi-County Agency Narcotics Task Force ("SEMCA"). Richland County is Weber's employer and a participating agency in SEMCA. In 2013 Andrew Sadek was a student at the North Dakota State College of Science.

[¶3]   In April 2013, two confidential informants purchased small quantities of marijuana from Andrew Sadek on two occasions. On November 21, 2013, officers searched Sadek's dorm room and found a marijuana grinder. At the time of the search, Weber informed Sadek about the felony charges he could face for the two April 2013 marijuana deliveries and told him he could either take the charges or sign up to work as a confidential informant.

[¶4]   On November 22, 2013, Sadek met with Weber to discuss becoming a confidential informant. During the interview Weber told Sadek that he was facing two felony charges and one misdemeanor charge. Weber told Sadek the felony charges could result in up to 40 years in prison and a "good possibility" existed he would get some prison time if he did not act as a confidential informant. Weber stated "a lot of this could go away" in exchange for his work as a confidential informant. Sadek agreed to work as a confidential informant, signing a Cooperating Individual Agreement. Weber told Sadek it was important for him not to tell anyone, including other law enforcement, that he was working as an informant.

[¶5]   By January 2014 Sadek did three controlled buys of marijuana from two people, but subsequently lost contact with Weber. In April 2014, Weber

contacted Sadek, stating that he would pursue the felony charges on the April 2013 drug sales unless Sadek lined up additional buys and that Sadek should ask around if he did not know anyone wanting to buy marijuana. Weber gave Sadek a deadline of May 1, 2014, to get the next deal done.

[¶6] On May 1, 2014, Sadek was reported missing. On June 27, 2014, a body was found in the Red River, later identified as Sadek. When his remains were found, his backpack was tied to him and was full of rocks. The coroner determined Sadek died of a gunshot wound to the head, but the range of fire was not determined. No determination was made whether the cause of death was homicide, suicide or accidental.

[¶7] The Sadeks sued Weber and Richland County, asserting claims of deceit and negligence. They alleged his death was directly related to his role as a confidential informant. Weber and Richland County moved for summary judgment seeking dismissal of the claims.

[¶8] The district court granted summary judgment in favor of Weber and Richland County and dismissed the case. The court concluded summary judgment was proper on the Sadeks' claims for deceit because the alleged misrepresentation was a prediction of a future event and was not actionable as a matter of law. The court also granted summary judgment on the Sadeks' negligence claims, concluding no evidence established the Defendants' conduct proximately caused Andrew Sadek's death.

[¶9] In granting summary judgment on the negligence claims, the district court held triable issues of fact existed on both whether Weber and Richland County owed a duty of care to Andrew Sadek under N.D.C.C. § 32-12.1-03(3)(g) (providing for potential liability of a political subdivision or its employee under circumstances in which a "special relationship" can be established between the political subdivision and the injured party), and on the applicable standard of care in deciding whether Weber's actions in recruiting and supervising Andrew Sadek as a confidential informant constituted negligence or gross negligence. The district court concluded summary judgment was proper because no evidence created a triable issue of fact about whether Andrew Sadek's death

2

resulted from the Defendants' alleged negligence in assessing the dangers posed to him as a confidential informant, and in training, warning, and supervising him in that role. The court essentially concluded no evidence established the Defendants' conduct proximately caused Andrew Sadek's death.

[¶10] Although the Sadeks only appealed from the order granting summary judgment, a subsequent consistent judgment of dismissal was entered. "An order granting summary judgment is not appealable[; however, an] attempted appeal from the order granting summary judgment will . . . be treated as an appeal from a subsequently entered consistent judgment, if one exists." *Farmers Union Oil Co. v. Smetana*, 2009 ND 74, ¶ 7, 764 N.W.2d 665 (citations omitted); *see also Ortega v. Sanford Bismarck*, 2019 ND 133, ¶ 8, 927 N.W.2d 872. Because a consistent judgment was entered, we treat the Sadeks' appeal as one from the judgment.

II

[¶11] Our standard for reviewing the district court's summary judgment decision is well established:

> "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record."

*Ortega*, 2019 ND 133, ¶ 9 (quoting *Johnson v. Bronson*, 2013 ND 78, ¶ 9, 830 N.W.2d 595).

3

[¶12] Under N.D.R.Civ.P. 56, summary judgment is proper when a party bearing the burden of proof at trial fails to establish the existence of a material factual dispute on an essential element of the claim. *Ortega*, 2019 ND 133, ¶ 10. When the party resisting a summary judgment motion presents no pertinent evidence on an essential element, it is presumed no such evidence exists. *Id.* The district court's decision granting summary judgment presents a question of law, which this Court reviews de novo on the entire record. *Id.*

III

[¶13] The Sadeks argue the district court erred in granting summary judgment dismissing their deceit claims.

[¶14] "In contrast to fraud, deceit is not an action dependent on a contract; it is a tort cause of action, and allows recovery of damages upon proof of an affirmative misrepresentation or suppression of material facts." *Bakke v. Magi-Touch Carpet One Floor & Home, Inc.*, 2018 ND 273, ¶ 20, 920 N.W.2d 726; *see also* N.D.C.C. §§ 9-10-02, 9-10-03. Under N.D.C.C. § 9-10-03, "[o]ne who willfully deceives another with intent to induce that person to alter that person's position to that person's injury or risk is liable for any damage which that person thereby suffers." A "deceit" under this section means:

> "1. The suggestion as a fact of that which is not true by one who does not believe it to be true;
>
> 2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;
>
> 3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
>
> 4. A promise made without any intention of performing."

N.D.C.C. § 9-10-02. *See Kuntz v. State*, 2019 ND 46, ¶¶ 43-45, 923 N.W.2d 513.

[¶15] Claims for both fraud and deceit require the same degree of specificity in pleadings under N.D.R.Civ.P. 9(b). *Kuntz*, 2019 ND 46, ¶ 51. As with deceit, in

4

the context of fraud mere opinion or predictions of future events are not actionable. *See Kary v. Prudential Ins. Co. of Am.*, 541 N.W.2d 703, 705-06 (N.D. 1996); *Sperle v. Weigel*, 130 N.W.2d 315, 320 (N.D. 1964). While a past or present false representation of a material fact must exist, "a mere expression of an opinion in the nature of a prophecy as to the happening or non-happening of a future event is not actionable." *Sperle*, at 320.

[¶16] In dismissing the Sadeks' deceit claim, the district court concluded Weber's state of mind was irrelevant because the alleged misrepresentation constitutes a prediction of a future event and was not actionable as a matter of law. The court rejected the Sadeks' contention that Weber made other misrepresentations to Andrew Sadek, concluding they failed to comply with N.D.R.Civ.P. 9(b), requiring the complaint to "state with particularity the circumstances constituting fraud." The court noted the only misrepresentation alleged in the complaint was Weber's opinion or prediction about whether Andrew Sadek might be sentenced to prison if the felony charges were actually filed sometime in the future.

[¶17] The Sadeks argue the district court erred in concluding their deceit claims were not pled with sufficient particularity under N.D.R.Civ.P. 9(b) and the court improperly disregarded all the evidence of misrepresentations made by Weber to Andrew Sadek. They contend the complaint, read in its entirety, establishes the deceit claim based on the Defendants' breach of their obligation to work honestly with Andrew Sadek. They assert the complaint's allegations provide the Defendants' failures and the creation of danger and heightened risk of harm, which show breach of their obligations.

[¶18] The Sadeks concede the only specific accusation in the complaint's deceit section was Weber's prediction about whether Andrew Sadek might be sentenced to prison. However, they contend the complaint in its entirety addresses other breached obligations. They assert Weber misrepresented facts about what Andrew Sadek would be required to do as a confidential informant. The Sadeks contend that in light of the "special relationship," these promises and lies also constitute deceit. While they argue the deceit claims were

5

sufficiently pled, to the extent they did not comply with N.D.R.Civ.P. 9(b), they request an opportunity to amend their complaint under N.D.R.Civ.P. 15.

[¶19] Based on our review of this record, including the complaint in its entirety, Weber's assertions to Andrew Sadek that there was a "good possibility" he would serve time in prison for the felony charges of delivery of a controlled substance if he did not work as a confidential informant was an opinion or a prediction of future events, and not actionable as deceit. To the extent the Sadeks broadly contend the Defendants breached other obligations to Andrew Sadek as constituting their claims for deceit, the heightened pleading requirements and specificity required under N.D.R.Civ.P. 9(b) were not met.

[¶20] The district court did not err in dismissing the Sadeks' claims for deceit.

IV

[¶21] The Sadeks argue the district court erred by granting the Defendants' motion for summary judgment on their negligence claims. The dispositive question here is whether the Sadeks presented sufficient evidence to create a genuine issue of material fact for trial on whether the Defendants' conduct proximately caused Andrew Sadek's death.

[¶22] Actionable negligence "consists of a duty on the part of an allegedly negligent person to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury *proximately caused* by the breach of the duty." *Diegel v. City of West Fargo*, 546 N.W.2d 367, 370 (N.D. 1996) (citing *Rawlings v. Fruhwirth*, 455 N.W.2d 574, 576 (N.D. 1990); *Carlson Homes, Inc. v. Messmer*, 307 N.W.2d 564, 566 (N.D. 1981)) (emphasis added). "Summary judgment is rarely appropriate in negligence actions." *Ortega*, 2019 ND 133, ¶ 10 (quoting *Arneson v. City of Fargo*, 303 N.W.2d 515, 517 (N.D. 1981)).

[¶23] Here, the district court concluded no evidence was presented showing Andrew Sadek's death resulted from the Defendants' alleged negligence in assessing the dangers posed to him as a confidential informant; in training, warning, and supervising him in that role; or that he died from a hazard posed

6

by his activities as a confidential informant. The court reasoned that "[e]ven assuming Andrew committed suicide because he was distraught over the fact of being a confidential informant (and his motivation cannot be known), his death did not result 'in a natural and continuous sequence' from the defendants' alleged negligence in supervising Andrew's activities." The court concluded no evidence established the Defendants' conduct proximately caused his death. The court explained:

> "The plaintiffs have not produced any evidence upon which a trier of fact could reasonably find that Andrew's death was proximately caused by the defendant's negligence. . . . The stark reality of this case is that there is not, and perhaps can never be, any evidence of how, when, where, or why Andrew Sadek died. The plaintiffs acknowledge that they do not know of any evidence as to what Andrew did after leaving his dorm at 2:05 a.m. on May 1, 2014, or why or how his body ended up in the Red River. There is undisputed evidence that Andrew had not done any work for SEMCA for several months prior to his disappearance, and there is no evidence that he engaged in any kind of drug transaction on the night of his disappearance. Therefore, there is no evidence upon which to draw any reasonable inference that his death resulted from some negligent act of the defendants."

[¶24] Generally, "[w]hether a breach of a duty is the proximate cause of an injury depends on the facts and circumstances of each case." *Botner v. Bismarck Parks & Recreation Dist.*, 2010 ND 95, ¶ 10, 782 N.W.2d 662 (citation omitted). This Court has explained:

> "A proximate cause is a cause which, as a natural and continuous sequence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred. *Jones v. Ahlberg*, 489 N.W.2d 576, 581 (N.D. 1992). The negligence of two or more persons may contribute concurrently as the proximate cause of an injury, and to be a proximate cause of an injury, *a person's conduct need not be the last cause nor the sole cause of an injury. Id.* To warrant a finding that a person's conduct is the proximate cause of an injury, the injury must be the natural and probable result of the conduct and must have been foreseen or

reasonably anticipated by that person as a probable result of the conduct. *Id.* at 581-82."

*Kimball v. Landeis*, 2002 ND 162, ¶ 7, 652 N.W.2d 330 (emphasis added). A plaintiff also must prove a defendant's conduct "was more probably the cause of the injury":

> "[I]f from the plaintiff's evidence it is as probable that the injury and damage of which the plaintiff complains resulted from a cause for which the defendant is not responsible as it is that such injury and damage resulted from a cause for which the defendant would be responsible, a prima-facie case of proximate cause has not been made and the plaintiff cannot recover, since plaintiff's recovery must be based upon more than mere speculation."

*Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 11, 766 N.W.2d 458 (quoting *Investors Real Estate Trust Props., Inc. v. Terra Pac. Midwest, Inc.*, 2004 ND 167, ¶ 9, 686 N.W.2d 140). Proximate cause is usually a question of fact. *Landeis*, at ¶ 7. However, "issues of fact may become questions of law if reasonable persons could reach only one conclusion from the facts." *Id.*

[¶25] The Sadeks argue the district court erred in concluding no triable issue of fact exists regarding proximate cause. They assert sufficient evidence was presented in response to the summary judgment motion showing Andrew Sadek's death was a direct result of his work as a confidential informant for Weber and SEMCA. They argue the court erred by failing to view all evidence in the light most favorable to them on their negligence claim.

[¶26] The Sadeks assert their expert's opinion and other evidence shows Andrew Sadek was coerced and pressured and establishes his death was caused by SEMCA's "many failures." The evidence includes text messages between Weber and Andrew Sadek which the Sadeks contend support the contention the Defendants' behavior and conduct caused or clearly contributed to his death. They contend the evidence shows that Defendants placed Andrew Sadek in an extremely dangerous role of informant and investigator, in violation of national and professional standards, and that Defendants failed to provide Andrew Sadek with requisite training, warning, and protection. They

8

assert Defendants negligently "chased and pursued" Andrew Sadek, placing him in an "impossible" situation from which death, or serious injury, was foreseeable as the probable result.

[¶27] Weber and Richland County respond that the district court properly dismissed the negligence claims as a matter of law. They assert the court properly held no competent, admissible evidence was submitted as to what, when, where, why, or how Andrew Sadek died and the plaintiffs' case is based on speculation. They also assert the expert's opinion is improper as a matter of law to establish the necessary facts. They assert that an "enormous" degree of speculation as to the cause of Andrew Sadek's death is necessary to find the Defendants are liable and that reasonable minds can only conclude there is no evidence that Andrew Sadek's death was caused by his acting as a confidential informant or that his death was caused by the Defendants' action or inaction.

[¶28] On this record, insufficient evidence establishes that the Defendants' conduct proximately caused the death of Andrew Sadek. Rather, the evidence only presents a timeline of events and a request that a jury be allowed to speculate what happened as a result of that string of events.

[¶29] From November 2013 until January 2014, it was undisputed that Andrew Sadek did three controlled buys of marijuana from two different people, but that he then lost contact with Weber. In April 2014, Weber sent Sadek the following text message: "You need to get something lined up or I am going to charge you out. There is a lot of dope on campus. Ask around if you don't know anyone. We need to get these done." Sadek responded "Okay[.]" On April 17, Weber again texted Sadek: "You have until May 1 to get the next deal done. Otherwise I will cut warrants for your arrest on your deliveries." Andrew Sadek was reported missing on May 1, 2014.

[¶30] It is unknown where Andrew Sadek was going and what he was planning on doing when he left his dorm room the night of May 1, 2014. It is also unknown where Andrew Sadek died, when he died, or whether he was killed by another. Apart from the fact Andrew Sadek was killed by a gunshot to the head, no evidence shows what happened between when Andrew Sadek left his

9

dorm on the night of May 1, 2014, and the time his body was discovered on June 27, 2014. There is no evidence Andrew Sadek's disappearance and death occurred during a controlled buy, and no evidence suggests that prior to his disappearance anyone knew he was a confidential informant. While Weber told Andrew Sadek he needed to complete a controlled purchase by May 1, 2014, there is no evidence Andrew Sadek was performing actions as an informant at the time of his disappearance or death.

[¶31] Because so little is known about the circumstances of Andrew Sadek's death, the possibilities as to how and when he died and who may be responsible for his death are manifest. Due to the lack of available evidence to suggest how, when, or even where Andrew Sadek died, a conclusion that his death was proximately caused by Defendants' acts or omissions would be based on speculation.

[¶32] The district court did not err in dismissing the Sadeks' negligence claims as a matter of law.

V

[¶33] We have considered the parties' remaining arguments and deem them to be without merit or unnecessary to our opinion. The judgment is affirmed.

[¶34] Daniel J. Crothers
    Lisa Fair McEvers
    Jerod E. Tufte
    Jon J. Jensen, C.J.

**VandeWalle, Justice, dissenting.**

[¶35] I respectfully dissent. I believe the Sadeks presented sufficient evidence to create a genuine issue of material fact for trial on whether the defendants' conduct was a proximate cause of Andrew Sadek's death.

[¶36] "Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts." *Markgraf v. Welker*, 2015 ND 303, ¶ 10, 873 N.W.2d 26 (citation omitted). "A proximate cause is a

cause that, as a natural and continuous sequence unbroken by any controlling intervening cause, produces the injury, and without it the injury would not have occurred." *Miller v. Diamond Res., Inc.*, 2005 ND 150, ¶ 10, 703 N.W.2d 316. "The negligence of two or more parties may contribute concurrently as the proximate cause of an injury, and a person's conduct need not be the last cause nor the sole cause of an injury to be a proximate cause of the injury." *Id.* "The determination of proximate cause is generally a question of fact." *Id.*

[¶37] Both the majority and the district court focus on "speculation" surrounding Andrew Sadek's death. However, a jury can be instructed not to speculate. I also note in some older cases, this Court has held the law would not presume suicide. *See Trihub v. City of Minot*, 23 N.W.2d 753, 756 (N.D. 1946) ("The law does not presume suicide or the commission of a crime. With no eye witnesses produced, plaintiff's case rests upon the circumstances shown. If from such circumstances reasonable men may draw different conclusions, one of which favors the plaintiff, then the case should be submitted to the jury." (citations omitted).); *Rober v. Northern Pac. Ry. Co.*, 142 N.W. 22, 24-25 (N.D. 1913) (holding in a wrongful death action with no eyewitnesses, plaintiff was entitled to presumption that deceased was in the exercise of reasonable care and presumption deceased had not committed suicide); see also N.D.C.C. § 31-11-03(4) (providing "disputable presumption" that "a person takes ordinary care of that person's own concerns"). Here, the district court held triable issues of fact existed both on whether Weber and Richland County owed a duty of care to Andrew Sadek under N.D.C.C. § 32-12.1-03(3)(g) and on the applicable standard of care to decide whether Weber's actions in recruiting and supervising Andrew Sadek as a confidential informant constituted negligence or gross negligence. I believe the close proximity in time between the May 1 deadline set by Weber, coupled with Weber's texts threatening Sadek with imminent felony charges, and the date Sadek went missing is sufficient to allow a factfinder to draw a reasonable inference that the defendants' conduct was a proximate cause of his death.

11

[¶38] Viewing the evidence in the light most favorable to the Sadeks, I believe summary judgment was inappropriate because genuine issues of material fact exist. Therefore, I dissent.

[¶39] Gerald W. VandeWalle