NUMBER 13-99-038-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


ARTURO MONTANEZ, INDIVIDUALLY

AND AS ADMINISTRATOR OF THE 

ESTATES OF MARIA DELALUZ 

MONTANEZ AND CHRISTOPHER LEE

ROSALES, DECEASED, ET AL., 
Appellants,


v.



THE CITY OF THREE RIVERS, LIVE OAK

COUNTY, ET AL., 
Appellees.

___________________________________________________________________


On appeal from the 36th District Court


of Live Oak County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Dorsey, Chavez and Kennedy



Opinion by Justice Chavez



 This is an accelerated appeal from the denial of a summary
judgment based on the affirmative defense of immunity.(1) We affirm. 

 Appellants Arturo Montanez, individually and as administrator of
the estates of Maria De La Luz Montanez and Christopher Lee Rosales,
and Santos Aguirre, Sr., individually and on behalf of minor children
Omar Aguirre and Alberto Aguirre and surviving heirs Francisca
Montanez and Apolonio Montanez under the Texas Wrongful Death Act
filed suit against Live Oak County and Live Oak County Police Deputies
Glenn Thompson and Vincent Roberts for torts arising out of a high-speed collision on U.S. Highway 281 on November 22, 1995. By two
issues, appellants complain the trial court erred by granting the
County's and its deputies' motion for summary judgment. Appellants
also complain the trial court erred by not granting their request for a
new trial.

Summary Judgment

 A motion for summary judgment must expressly state the grounds
upon which it is made. McConnell v. Southside Sch. Dist., 858 S.W.2d
337, 339 (Tex. 1993); Tex. R. Civ. P. 166a(c). Summary judgments may
not be affirmed or reversed on grounds not expressly set forth in the
motions presented to the trial court. City of Houston v. Clear Creek
Basin Auth., 589 S.W.2d 671, 677 (Tex. 1979). It must be based only
on the grounds expressly presented in the motion, and a court may not
rely on briefs or summary judgment evidence in determining whether
grounds are expressly presented. McConnell, 858 S.W.2d at 339. 
Here, the motion clearly presents the grounds for summary judgment. 
Appellee argues that the clerk's record does not contain evidence
appellants referred to in their appellate brief. However, the
supplemental clerk's record contains all evidence not in the clerk's
record used by the appellant to brief their arguments against the
motion. 

 The proper inquiry on appeal of summary judgment is whether the
appellant fulfilled his initial burden 1) to establish as a matter of law
that there remains no genuine issue of material fact as to one or more
essential elements of the plaintiff's cause of action or 2) to establish his
affirmative defense to the plaintiff's cause of action as a matter of law. 
Rhone-Poulenc, Inc. v. Kenda Steel, 997 S.W.2d 217, 222 (Tex. 1999);
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex.
1985). In deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the non-movant
must be taken as true, with every reasonable inference indulged in favor
of the non-movant, and any doubts resolved in his favor. Nixon, 690
S.W.2d at 549. Once the movant establishes an affirmative defense
which would bar the suit as a matter of law, the non-movant must then
produce summary judgment proof raising a fact issue in avoidance of
the affirmative defense. Cameron County v. Carrillo, 7 S.W.3d 706, 711
(Tex. App.--Corpus Christi 1999, no pet.).


Summary Judgment Evidence

 The summary judgment evidence reveals that appellants' van
collided in a head-on collision with a pickup truck driven by Joseph
McConnell. McConnell was headed the wrong way on a divided
highway. The collision resulted in injuries and fatalities. The collision
involved no vehicles other than the appellants' van and McConnell's
truck. McConnell, dead at the scene, had a blood alcohol level of one
hundred eighteen milligrams per deciliter. His estate settled out of court
with the appellants and is not a party to this suit. 

 Prior to the collision, McConnell stopped at a convenience store in
Three Rivers. The clerks in the store testified that McConnell was
acting with bizarre and inappropriate manners and that he had admitted
to having been drinking. McConnell hit a utilities pole outside of the
convenience store in Three Rivers and then left the scene. It was
reported as a hit and run, and City of Three Rivers Police Officer Vance
Roberts pulled over McConnell a few minutes after he left the
convenience store. As he was questioning McConnell, Live Oak County
Deputies Glenn Thompson and Vincent Roberts arrived and observed
McConnell pass sobriety tests administered by Officer Vance Roberts. 
Since the incident was outside of the city limits, Live Oak County
Deputy Thompson took over. He had McConnell drive approximately
one and a half to two miles back to the convenience store. Deputies
Thompson and Vincent Roberts observed McConnell drive without any
signs of intoxication. 

 After returning to the convenience store, Deputy Thompson
determined that the only damage from McConnell's impact on the
telephone pole was the tripping of a circuit breaker that caused the
power to go out in the store. There was no property damage. City of
Three Rivers Officer Vance Roberts had informed Deputy Thompson that
McConnell had an expired driver's license and that he was under
medical advisory review. The license had expired ten days prior to the
incident. McConnell explained that a heavy work schedule as surveyor
had prevented him from renewing his license and that the medical
advisory review pertained to a brief stay at a state hospital for
depression. A utility company employee came and fixed the electricity,
and Deputy Thompson allowed McConnell to leave without a citation
for the expired driver's license or for hitting the utilities pole.

 Live Oak County Deputy Vincent Roberts followed McConnell
because he did not drive in the direction he said he was going to go,
but made no attempt to pull him over, and then lost sight of him. Soon
thereafter, McConnell was reported to the police for pulling onto the
lawn of a private residence and having smelled strongly of alcohol. 
McConnell then headed south in the northbound lanes of U.S. 281. 
Deputy Vincent Roberts received the report and spotted McConnell's
taillights traveling on the wrong side of the highway. Deputy Vincent
Roberts activated his lights and siren and drove after him in the
southbound lanes of the highway. Very soon after Deputy Vincent
Roberts was able to get parallel with McConnell's truck, the collision
occurred.

Sovereign Immunity

 Live Oak County is a political subdivision of the State of Texas and
is not liable for damages unless a negligent or wrongful act falls within
a statutory waiver of immunity. Texas Highway Dept. v. Webber, 219
S.W.2d 70 (Tex. 1949). A government entity may be liable for police
negligence in police pursuits where third parties are injured. City of
Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994). The
pertinent limitation to governmental immunity is set out in the Texas
Tort Claims Act:

A governmental unit in the State is liable for:


(1) Property damage, personal injury and death
proximately caused by the wrongful act or omission or
the negligence of an employee acting within the scope
of employment if:

 

 (a) the property damage, personal injury or death
arises from the operation or use of a motor driven
vehicle or motor driven equipment; and


 (b) the employee should be personally liable to the
claimant according to Texas law; and


(2) Personal injury and death so caused by a condition or
use of tangible personal or real property if the
governmental unit would, were it a private person, be
liable to the claimant according to Texas law. 


Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 1997).

 The waiver of immunity under the Texas Tort Claims Act is subject
to Sections 101.055(3) and 101.056 of the Civil Practices and Remedies
Code. Section 101.055(3) states in its pertinent part:

This chapter does not apply to a claim arising:

(3) from the failure to provide or the method of providing
police or fire protection.


Tex. Civ. Prac. & Rem. Code Ann. § 101.055(3) (Vernon 1997).


Section 101.056 states:


This chapter does not apply to a claim based on:


(1) The failure of a governmental unit to perform an act
that the unit is not required by law to perform; or


(2) The governmental unit's decision not to perform an act
or its failure to make a decision on the performance or
nonperformance of an act if the law leaves the
performance or nonperformance of the act to the
direction of a governmental unit.


Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (Vernon 1997).


The supreme court has interpreted Sections 101.055(3) and 101.056 as
meaning that the method of performing an act refers to the
governmental decision or plan for providing police protection. Driskill
v. State, 787 S.W.2d 369, 370 (Tex. 1990); State v. Terrell, 558 S.W.2d
784, 787-88 (Tex. 1979). The method that the Live Oak Deputy chose
to try to prevent a wreck was to approach McConnell from the highway
parallel to where McConnell was driving. The fact that the deputy was
not successful in preventing the wreck does not mean that there was
no decision or plan for providing police protection.

 Appellant argues that the court should find police negligence
under the rational that, "The intervention of negligent or even reckless
behavior by the driver of the car where the police pursues, does not . .
. require the conclusion there is a lack of proximate cause between
police negligence and the innocent victims' injuries." Travis v. City of
Mesquite, 830 S.W.2d 94, 98 (Tex. 1992). In Travis, police officers
pursued a high speed chase of a suspect of solicitation of prostitution
the wrong way on a divided highway at night. A head-on collision
resulted.

 The case before the court today is different. The car that the Live
Oak County Deputy was pursuing was not in flight from the law when
it entered the wrong lane of the highway. At his own initiative,
McConnell was driving at high risk of causing a serious collision. The
deputy was not behind him on the wrong side of the divided highway;
he was approaching from a parallel position. In Travis, the collision
probably would not have happened if the police had not been in pursuit. 
In this case, Deputy Vincent Robert's interest in his pursuit was to
prevent a wreck; McConnell probably would have caused the wreck
regardless of whether a police officer had tried to stop him. Hence,
Travis is not applicable to the facts of this case.

 Furthermore, Section 101.021(2) requires the use or condition of
tangible personal property to be the proximate cause of the personal
injury or death in order for the State to lose its immunity. The use or
condition of no tangible property owned by the county caused this
collision. The Ninth Court of Appeals found no waiver of immunity
when a police car was used to transport an injured person to jail, where
she died, instead of to a hospital, for treatment. City of Orange v.
Jackson, 927 S.W.2d 784 (Tex. App.--Beaumont 1996, no writ). There
was no negligence in the condition or the use of the vehicle itself that
caused the plaintiff's death; rather, it was the officers' decision not to
provide necessary medical treatment that caused her death. Therefore
there was no waiver of immunity. Id. at 787.

 In the case before us today, the appellants argue that a police car
was negligently used to pursue McConnell, and that the siren and
flashing lights from the Live Oak County Deputy's patrol car distracted
the appellant and caused the collision. As in City of Orange, the use
and condition of the police car and equipment did not cause the
collision. Under this rational, the cause would have been the deputy's
decision to follow McConnell and try to get him off of the road. The car,
siren and police lights were not negligently used or in negligently kept
condition; they were used properly according to the deputy's decision
to get a drunk driver off of the wrong side of the highway. It is possible
that Deputy Vincent Roberts could have attempted to get McConnell off
of the road without using his siren and police lights, but in doing so, he
would not have fully warned other drivers on either side of the highway
of the dangers of a police action in progress. 

 The supreme court has recently ruled on the difference between
causation by the condition or use of property and causation by
negligent actions by government employees. In this case, a patient
involuntarily committed to a county mental health facility for severe
depression eloped through hospital doors that were negligently left
unlocked and threw himself in front of a truck. Dallas County Mental
Health and Retardation v. Bossley, 968 S.W.2d 339 (Tex. 1998). The
collision that ensued was not caused by the lock on the hospital door;
it was caused by the state hospital's failure to keep the patient inside
of the hospital door. Id. at 343.

 Here, as in both Dallas County Mental Health and Retardation and
City of Orange, there was no statutory waiver of the case at bar. "The
requirement of causation is more than a mere involvement [of
property]." Id. at 343. "If only involvement were required, the waiver
of immunity would be virtually unlimited, since few injuries do not
somehow involve tangible personal or real property." Id. at 343. 
"Requiring only that a condition or use of property be involved would
conflict with the Act's basic purpose of waiving immunity only to a
limited degree." Id. at 343. Here, the siren and police lights are not a
proper link between the damage suffered by appellants and the police
force. They do no more than provide appellants with a condition that
makes liability for the injury possible under the statute. Thus, since the
County cannot be held liable for actions of its officers under the doctrine
of sovereign immunity as a matter of law, there is no statutory waiver
of immunity. 

Official Immunity

 We now address the trial court's denial of summary judgment of
the deputies' qualified immunity defense based on the deputies' official,
or qualified immunity claim. See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(5) (Vernon 1995); Kilburn, 849 S.W.2d at 812; Vega, 951
S.W.2d at 27. Under the Texas Tort Claims Act, a governmental entity
may bear liability for its employees' torts if, among other things, "the
employee would be personally liable to the claimant according to Texas
law . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (Vernon 1997). 
Conversely, if qualified immunity protects the employee from liability,
then the governmental entity's sovereign immunity remains intact. 
Kilburn, 849 S.W.2d at 812; DeWitt v. Harris County, 904 S.W.2d 650,
656 (Tex. 1995). In this case, a sovereign immunity claim may be
based on an individual's assertion of qualified immunity and falls within
the scope of § 51.014(5). Kilburn, 849 S.W.2d at 812; City of Mission
v. Ramirez, 865 S.W.2d 579, 582 (Tex. App.--Corpus Christi 1993, no
writ). 

 Official or qualified immunity is an affirmative defense. City of
Lancaster v. Chambers, 883 S.W.2d at 653. When seeking summary
judgment on an affirmative defense, the burden is on the defendant to
establish all essential elements of the defense. Cathey v. Booth, 900
S.W.2d 339, 341 (Tex. 1995). No disputed question of material fact can
remain on the affirmative defense. Black v. Victoria Lloyds Ins. Co., 797
S.W.2d 20, 27 (Tex. 1990).

 Official immunity is meant to protect government operations from
the harassment of litigation, not to shield police officers or other
government employees from liability. Kassen v. Hatley, 887 S.W.2d 4,
8 (Tex. 1994); See Westfall v. Erwin, 484 U.S. 292 (1988). Police
officers are entitled to official immunity from suits arising from the
performance of their 1) discretionary duties 2) in good faith as long as
they are 3) acting within the scope of their authority. City of Lancaster,
883 S.W.2d at 653. On appeal, we must determine whether the
summary judgment evidence proves that Deputies Glenn Thompson
and Vincent Roberts are entitled to official immunity as a matter of law,
i.e., whether the evidence shows that they were performing a
discretionary function, acting in good faith, and within the scope of their
authority.

 Appellants make no argument that the deputies' actions did not
involve discretionary duties performed within the scope of their
authority. After reviewing the evidence, we conclude that the police
deputies were performing a discretionary function within the scope of
their authority. Thus, the disputed issue is whether appellants
sufficiently proved the element of good faith as a matter of law. 

 In City of Lancaster, the supreme court stated that qualified
immunity protects "all but the plainly incompetent or those who
knowingly violate the law." City of Lancaster, 883 S.W.2d at 656. A
police officer acts in good faith in a high speed chase if a reasonably
prudent officer, under the same or similar circumstances, could have
believed that the need to immediately apprehend the suspect
outweighed a clear risk of harm to the public in continuing the pursuit. 
Id. at 656. The "could have believed" aspect of the good faith test
means that, in order to be entitled to summary judgment, a police
officer must prove that a reasonably prudent officer might have had the
same belief. Id. at 656-57. Immunity should be recognized if officers
of reasonable competence could disagree on the issue. Id. at 657 n.8.

 Appellants attack the motion for summary judgment, contending
that Deputy Vincent Roberts failed to act as a reasonably prudent officer
by pursuing McConnell, creating a clear risk of harm to the public that
was not outweighed by the necessity of McConnell's apprehension. 
Appellants further contend that Deputy Thompson failed to act as a
reasonably prudent officer because he did not administer any field
sobriety test at McConnell's previous stop, ignored signs of intoxication,
and released McConnell with a suspended license.

 Both deputies acted as reasonably prudent officers. As discussed
above, Deputy Vincent Roberts acted as a reasonably prudent officer
when he pursued McConnell instead of letting him continue to drive
rapidly on the wrong side of the divided highway. Deputy Thompson
could have administered field sobriety tests on McConnell, but he had
already witnessed McConnell pass the sobriety tests administered by
Three Rivers Police Officer Vance Roberts and then drive approximately
one and a half to two miles back to the convenience store without any
signs of intoxication. Using his discretion, Deputy Thompson decided
that McConnell was not an intoxicated driver and decided not to arrest
McConnell for driving with an expired license that was under medical
review. 

 Appellants have not adequately substantiated their allegations
about a lack of good faith. Appellants' expert has failed to present
controverting evidence that no reasonable officer in Deputy Thompson's
position could have thought the facts were such as to justify his
actions. He mischaracterizes the events and conditions of the scenario
before the wreck. His conclusions are based on incorrect information,
and he makes conclusory assertions that are not substantiated in the
record.

 An expert's testimony will support summary judgment only if it is,
"clear, positive and direct, otherwise credible and free from
contradictions and inconsistencies, and could have been readily
controverted" Tex. R. Civ. P. 166a(c). "Conclusory statements by an
expert are insufficient to support or defeat summary judgment." 
Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997). The
supreme court has articulated that an expert testifying about good faith
must address what a reasonable officer could have believed under the
circumstances and must substantiate each element of the Chambers
test. Wadewitz, 951 S.W.2d at 466-67. 

 Appellants' expert witness mistakenly described the expired
license as a suspended license. To have an expired license, a driver
need only fail to renew his license on time. Tex. Transp. Code Ann. §
521.271 (Vernon 1999). McConnell's license was a week and a half
overdue. A driver must be incapable of safely operating a motor vehicle,
or have affirmatively acted in violation of the law or of a restriction on
his license for his license to be suspended. Tex. Transp. Code Ann. §§
521.291, 521.294 (Vernon 1999). Driving with a suspended license is
a more serious offense. Appellants' expert witness mistakenly
contradicted the record by stating that McConnell was not given a
sobriety test. Both County Deputies witnessed McConnell pass a
sobriety test administered by the City of Three Rivers Police Officer. 
Since driving with a suspended license is a more serious offense than
driving with an expired license, and not administering any sobriety tests
under the conditions of this incident would have clearly been grounds
for an attack on the deputities' good faith, the conclusions of appellants'
expert are not well grounded.

 Appellants' expert determined that McConnell fled detainment and
was in a state of panic, with no facts to support this conclusion. The
record states that he was investigated and allowed to leave. Since
there is no proof in the record to support this conclusion, this attack on
the officers' good faith is not adequately substantiated.

 Appellants' summary judgment proof does not meet the Wadewitz
standard. They therefore have not produced summary judgment proof
raising a fact issue in avoidance of the affirmative defense of official
immunity.

Motion for new trial

 An appellate court may only reverse a trial court's denial of a
motion for new trial if the trial court abused its discretion. Strackbein
v. Prewitt, 671 S.W.2d 37, 38 (Tex. 1984). Appellants base their
motion for a new trial upon a claim of newly discovered evidence. The
evidence they wish to introduce is a toxicologist's report that describes
the effects alcohol consumption has on an individual, and the testimony
of a student studying to be an emergency medical technician regarding
a conversation about McConnell's condition he had with Deputy
Vincent Roberts before the accident. 

 A party who moves for new trial based upon the existence of
newly discovered evidence has the burden of showing: 1) that the
evidence has come to his knowledge since trial, 2) that it is not due to
a lack of due diligence that the evidence did not come sooner, 3) that
the evidence is not cumulative, and 4) that the evidence is so material
that it would probably produce a different result if a new trial were
granted. Jackson v. VanWinkle, 660 S.W.2d 807, 809 (Tex. 1983). 
Appellants have done little more than present some additional evidence. 
They have not shown that the evidence has come to their knowledge
since the date the summary judgment was granted,(2) that they could not
have had the evidence at an earlier time, or that the evidence would
change the result of the trial. We see no abuse of discretion in the 

trial court's decision not to grant the motion for a new trial.

 We affirm the judgment of the trial court. 

 MELCHOR CHAVEZ

 Justice


Do not publish.

Tex. R. App. P. 47.3


Opinion delivered and filed this 

the 8th day of June, 2000.

 






1. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (a)(5) (Vernon
Supp. 1999).
2. Summary judgment hearings are characterized as "trials" for
the purpose of requests for a motion for a new trial based on newly
discovered evidence. Goswami v. Metropolitan Sav. and Loan
Assoc., 751 S.W.2d 487, 490 (Tex. 1988).